UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

WENTWORTH RATTRAY,

                              Plaintiff,

              v.

THE CITY OF NEW YORK, POLICE
OFFICER JOSE CADAVID (BADGE NO.
9085), POLICE OFFICER SGT MERVIN
BAUTISTA, and POLICE
OFFICER ALYSSA TRIGUENO,

                              Defendants.

**ORDER**

17 Civ. 8560 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

              Pro se Plaintiff Wentworth Rattray has filed objections to Magistrate Judge

Katharine Parker's Report and Recommendation ("R&R"), which recommends that Plaintiff's

motion for leave to file a Third Amended Complaint be granted in part and denied in part.  (R&R

(Dkt. No. 87); Pltf. Obj. (Dkt. No. 88); Pltf. Supp. Obj. (Dkt. No. 91))  For the reasons stated

below, Plaintiff's objections will be overruled, and the R&R will be adopted in its entirety.

**BACKGROUND**

I.    **FACTS[1]**

              On November 5, 2016, Plaintiff was checking his mail in his apartment complex

in Manhattan, when he saw Wendy Sandy – his daughter's mother – standing outside the lobby

entrance.  (Proposed Third Amended Complaint ("TAC") (Dkt. No. 75-1) ¶ 24)  Sandy said that

---

[1]  The parties have not objected to Judge Parker's recitation of the facts alleged in the proposed
Third Amended Complaint.  Accordingly, this Court adopts her account of the alleged facts in
full.  See Silverman v. 3D Total Solutions, Inc., No. 18 CIV. 10231 (AT), 2020 WL 1285049
(S.D.N.Y. Mar. 18, 2020) ("Because the parties have not objected to the R&R's characterization
of the background facts . . . , the Court adopts the R&R's 'Background' section and takes the
facts characterized therein as true.").

she was picking up their 10-year old daughter and demanded to see her.  (Id. ¶ 29; Domestic

Incident Report (Dkt. No. 75-2) at 7)  Plaintiff has full custody of the couple's daughter (TAC

(Dkt. No. 75-1) ¶¶ 25-26), and told Sandy that she did not have visitation rights to see their

daughter that day.  (Id. ¶ 30)  Plaintiff also informed Sandy that their daughter was not at home.

(Id. ¶ 32)

At about 7:00 that evening, New York City Police Department ("NYPD")

Officers Jose Cadavid and Alyssa Trigueno rang Plaintiff's doorbell and asked to speak with

him.  (Id. ¶¶ 34, 36, 42)  Without opening the door, Plaintiff asked the officers what they wanted.

(Id. ¶¶ 35-36)  The officers stated that Sandy was downstairs to pick up her child.  (Id. ¶ 35)

Officer Cadavid asked Plaintiff to open the door so they could talk, but Plaintiff refused,

claiming that he could hear the officers clearly with the door closed.  (Id. ¶ 36)  In response,

Officer Cadavid allegedly threatened to "take-down the door."  (Id. ¶ 37)  Plaintiff, fearing for

his safety and that of his child, opened the door.  (Id. ¶ 38)

While still standing outside the apartment door, the police officers asked to see

Plaintiff's daughter.  (Id. ¶¶ 39-40)  Plaintiff replied that "she was safe, that she was where she

needed to be on a playdate, and that she would not be made available to speak to them."  (Id. ¶

40)  Officer Cadavid then asked Plaintiff if they could look around, but Plaintiff refused the

request.  (Id. ¶ 41)  Officer Trigueno told Plaintiff that if he did not provide documentation

demonstrating that he had custody of his daughter, he "would be going to jail."  (Id. ¶ 42)

Plaintiff then asked to speak to an "NYPD supervisor" and motioned to close the

door until the supervisor arrived.  (Id. ¶¶ 44-45)  Officer Cadavid "used his foot to prevent the

door of Plaintiff's apartment from closing."  (Id. ¶ 45)  Unsure why his door was not closing,

Plaintiff moved closer to see what was blocking it, at which point Officer Cadavid forcefully

2

pushed the door open.  (Id. ¶ 46)  Plaintiff was struck by the door.  (Id. ¶ 47)  Plaintiff does not allege that he suffered any specific physical injuries as a result.

Plaintiff became fearful and angry, and he retreated into his apartment to avoid direct contact with Officer Cadavid.  (Id. ¶ 48-49)  Officer Cadavid entered Plaintiff's apartment and conducted a search.  (Id. ¶¶ 49-50)  He searched Plaintiff's daughter's bedroom and closet, the kitchen, and the bathroom – all without a warrant or Plaintiff's consent.  (Id.)  Officer Cadavid then asked Plaintiff for identification, which Plaintiff provided.  (Id. ¶¶ 52-54)  Officer Cadavid interrogated Plaintiff while standing in the living room, blocking the apartment door.  (Id. ¶ 55)  Officer Trigueno blocked the apartment door from the outside.  (Id.)

After several minutes, Plaintiff requested that Officer Cadavid leave the apartment and return his identification, but Officer Cadavid refused and continued to interrogate Plaintiff.  (Id. ¶¶ 56, 58)  At some point, Plaintiff asked if he could leave the apartment, but Officer Cadavid said that he could not.  (Id. ¶ 161)

Plaintiff then called 911, and reported that two NYPD officers were at his home, and that one officer had illegally entered and searched his apartment and was refusing to leave.  (Id. ¶ 59)  At Plaintiff's request, the 911 operator remained on the line with him for 63 minutes, until NYPD Sergeant Hornandez arrived at Plaintiff's apartment.  (Id. ¶ 61)  The sergeant confirmed that Sandy did not have custody of the couple's child that day.  (Id. ¶ 209(a))

Defendant Officers Cadavid and Trigueno completed a Domestic Incident Report (the "DIR") concerning their encounter with Plaintiff.  (Id. ¶ 74)  The DIR does not disclose that Plaintiff feared for his safety during the encounter, that the officers entered his apartment without consent or warrant, that Plaintiff had full custody of his daughter on the date of the incident, and that the officers threatened to put him in jail if he did not provide proof of custody.  (Id. ¶¶ 73-

3

76)  Defendant Sergeant Mervin Bautista allegedly approved the DIR without ensuring that it contained these details.  (Id. ¶¶ 73-74)

        As a result of this incident, Plaintiff "has become fearful of police officers in the City of New York."  (Id. ¶ 65)  In 2019, Plaintiff sought psychiatric treatment, and he has been diagnosed with Post-Traumatic Stress Disorder ("PTSD").  (Dkt. Nos. 91-1, 91-2)

## II.    PROCEDURAL HISTORY

### A.    The Second Amended Complaint and Defendants' Motion to Dismiss

        Plaintiff commenced this action on November 2, 2017.  (Cmplt. (Dkt. No. 2))  He filed an Amended Complaint on November 20, 2017 (Dkt. No. 6), and a Second Amended Complaint ("SAC") on June 29, 2018 (Dkt. No. 42).  The SAC asserts Section 1983 claims for (1) unreasonable search and seizure, (2) due process violations, (3) failure to intervene, (4) false arrest/imprisonment, (5) excessive force, and (6) municipal and supervisory liability.  (Id.)  The SAC also asserts a Section 1985 conspiracy claim, and state law claims for (1) false arrest/imprisonment, (2) assault, (3) battery, (4) intentional infliction of emotional distress, and (5) respondeat superior liability.  (Id.)

        On November 21, 2018, Defendants moved to dismiss the SAC pursuant to Fed. R. Civ. P. 12(b)(6).  (Dkt. No. 54)  On September 9, 2019, this Court denied Defendants' motion with respect to Plaintiff's Section 1983 unlawful search claim against Officers Cadavid and Trigueno, and Plaintiff's Section 1983 failure to intervene claim against Officer Trigueno, to the extent that claim is premised on an unlawful search.[2]  (Sept. 9, 2019 Order (Dkt. No. 72) at 27)  The Court dismissed all other federal claims for failure to state a claim, and all state claims for

---

[2]  Because the Court denied Defendants' motion to dismiss as to these claims, no amendment was required, and this Order does not discuss the viability of these claims.

failure to comply with New York's notice of claim requirements.  (Id. at 6-28)  The Court

granted Plaintiff leave to move to amend the SAC as to his federal claims, but denied such leave

as to Plaintiff's state law claims, on grounds of futility.[3]  (Id. at 26-28 (citing Dilworth v.

Goldberg, No. 10 CIV. 2224 (JMF) (GWG), 2013 WL 5745989, at *2 (S.D.N.Y. Oct. 23, 2013)

("It is well-settled that where a proposed claim would fail because of lack of compliance with a

prerequisite to suit, such as a notice of claim requirement, leave to amend will be denied as

futile.")))

###### B.   Motion to Amend

On October 28, 2019, Plaintiff moved for leave to file a Third Amended

Complaint.  (Dkt. No. 75)  The TAC asserts the same claims alleged in the SAC.  (TAC (Dkt.

No. 75-1))  On November 7, 2019, this Court referred Plaintiff's motion to Magistrate Judge

Parker for an R&R.  (Dkt. No. 81)

###### C.   Judge Parker's R&R

In her April 20, 2020 R&R, Judge Parker recommends that Plaintiff's motion to

amend be granted insofar as the TAC asserts a Section 1983 false arrest claim against Officer

Cadavid, but otherwise denied.  (R&R (Dkt. No. 87) at 17)

###### 1.   Plaintiff's State Law Claims

This Court did not grant Plaintiff leave to amend as to his state law claims (Sept.

9, 2019 Order (Dkt. No. 72) at 25-27), but Plaintiff nonetheless reasserts the same state law

claims pled in the SAC (TAC (Dkt. No. 75-1) ¶¶ 110-22, 155-67, 199-213, 225-42), and Judge

Parker analyzes the viability of those claims.  (R&R (Dkt. No. 87) at 7-9)

---

[3]  Familiarity with the Court's September 9, 2019 order (Dkt. No. 72) is assumed.

As the R&R notes, New York law provides that "'[n]o action . . . shall be prosecuted or maintained against the city . . . or any employee . . . unless a notice of claim shall have been made and served upon the city'" within 90 days from when the claim arose.  (R&R (Dkt. No. 87) at 7-8 (quoting N.Y. Gen. Mun. L. Section 50-I(1)))  The notice must contain: "'(1) the name and post-office address of each claimant, and of his attorney, if any; (2) the nature of the claim; (3) the time when, the place where and the manner in which the claim arose; and (4) the items of damage or injuries claimed to have been sustained. . . .'"  (Id. at 8 (quoting N.Y. Gen. Mun. L. § 50-E(1)(b)(2)))  New York law requires that the plaintiff affirmatively plead that he has complied with these notice of claim requirements.  (Id. (citing Perkins v. City of New York, No. 14 CV 3779, 2017 WL 1025987, at *5 (S.D.N.Y. Mar. 15, 2017)))

Plaintiff claims that he did not know about alleged omissions and inaccuracies in the Domestic Incident Report until weeks after the November 5, 2016 incident, and contends that application of the notice of claim requirements would be "unjust" because "a person cannot be expected to meet deadlines when they are unaware that they have been wronged."  (TAC (Dkt. No. 75-1) ¶ 22(e))  In rejecting Plaintiff's argument, Judge Parker notes that nothing prevented Plaintiff from filing a notice that included "the date, location and description of the alleged accident and the manner in which the claim arose."  (R&R (Dkt. No. 87) at 8)  Because Plaintiff did not file a valid notice of claim within the 90-day period, Judge Parker recommends that Plaintiff's motion for leave to amend be denied as to his state law claims.  (Id. at 9)

## 2.  Plaintiff's Section 1983 Claims

### a.  Unlawful Search Claim Against Sergeant Bautista

This Court denied Defendants' motion to dismiss with respect to Plaintiff's unlawful search claim against Officers Cadavid and Trigueno but granted the motion as to

6

Sergeant Bautista.  (Sept. 9, 2019 Order (Dkt. No. 72) at 10)  Judge Parker notes that the TAC does not contain any new factual allegations concerning Sergeant Bautista's involvement in the alleged illegal search, and concludes that therefore Plaintiff should not be permitted to proceed on this claim.  (R&R (Dkt. No. 87) at 9)

### b.    <u>False Arrest Claim Against Officer Cadavid</u>

In the September 9, 2019 Order, this Court dismissed the SAC's false arrest claim against Officer Cadavid.  (Sept. 9, 2016 Order (Dkt. No. 72) at 10-13)  In the TAC, Plaintiff reasserts the same claim.  (TAC (Dkt. No. 75-1) ¶¶ 155-67)

As Judge Parker notes, false arrest claims "'may be complete without either a formal arrest or a detention.'"  (R&R (Dkt. No. 87) at 10 (quoting <u>Scott v. City of Mount Vernon</u>, No. 14-CV-4441 (KMK), 2017 WL 1194490, at *18 (S.D.N.Y. Mar. 30, 2017)))  "'Thus, an arrest "may occur even if the formal words of arrest have not been spoken provided that the subject is restrained and his freedom of movement is restricted."'"  (<u>Id.</u> (quoting <u>Scott</u>, 2019 WL 1194490 at* 18 (quoting <u>Posr v. Doherty</u>, 944 F.2d 91, 96 (2d Cir. 1991)))  "'Whether a seizure is an arrest or . . . merely an investigatory detention, depends on the reasonableness of the level of intrusion under the totality of the circumstances.'"  (<u>Id.</u> (quoting <u>Posr</u>, 944 F.2d at 98))

According to the TAC, Officer Cadavid forced open Plaintiff's apartment door, striking Plaintiff.  (<u>Id.</u> at 11 (citing TAC (Dkt. No. 75-1) ¶¶ 46-47))  Plaintiff asked if he could leave his apartment, and Officer Cadavid refused his request.  (<u>Id.</u> (citing TAC (Dkt. No. 75-1) ¶¶ 117, 157, 161))  Officers Cadavid and Trigueno also blocked the entryway to Plaintiff's apartment.  (<u>Id.</u> (citing TAC (Dkt. No. 75-1) ¶ 117))  Plaintiff further alleges that he was "confined" in his apartment for more than 63 minutes by Officer Cadavid.  (<u>Id.</u> (citing TAC

(Dkt. No. 75-1) ¶ 156))  Judge Parker finds that these allegations are sufficient to plead a Section 1983 false arrest claim against Officer Cadavid and recommends that Plaintiff's motion to amend be granted as to this claim.  (R&R (Dkt. No. 87) at 11)

### c.      Excessive Force Claim Against Officer Cadavid

Plaintiff attempts to revive his Section 1983 excessive force claim against Officer Cadavid, which is premised on the allegation that Cadavid pushed open Plaintiff's apartment door, causing the door to strike Plaintiff.  (TAC (Dkt. No. 75-1) ¶¶ 45-47, 179-98)  As Judge Parker observes, courts "must evaluate the use of force from the perspective of a reasonable officer on the scene, ignoring any hindsight analysis."  (R&R (Dkt. No. 87) at 12 (citing Graham v. Connor, 490 U.S. 386, 396 (1989)))  An excessive force claim is viable only where the force is "'objectively sufficiently serious or harmful enough to be actionable and, consequently, that the amount of force used was more than de minimis.'"  (Id. (quoting Rincon v. City of New York, No. 03 CIV. 8276 (LAP), 2005 WL646080, at *4 (S.D.N.Y. Mar. 21, 2005)))  "'[D]e minimis injury can serve as conclusive evidence that de minimis force was used.'"  (Id. at 13 (quoting Ketcham v. City of Mount Vernon, No. 17 CV 7140 (VB), 2019 WL 7293365, at *3 (S.D.N.Y. Dec. 30, 2019)))

As noted above, Plaintiff alleges no physical injury resulting from this incident. Judge Parker concludes that being struck by an apartment door under these circumstances is akin to a "slight shove," and does not amount to excessive force.  (Id. at 12 (citing Petway v. City of New York, No. 12-CV-279 (ARR) (LB), 2014 WL 839931, at *8 (E.D.N.Y. Mar. 4, 2014) (a "slight shove" causing plaintiff no pain and no injury, and resulting in no medical treatment, is not excessive force)))  For this reason, Judge Parker recommends that leave to amend be denied as to this claim.  (Id. at 13)

###### d.     <u>Due Process Claim</u>

Plaintiff reasserts his due process claim, contending that Defendants "employed a gross abuse of power, unfair procedures and gross violation of plaintiff's right to be free from [deprivation] of liberty without due process of law."  (TAC (Dkt. No. 75-1) ¶ 169)

As Judge Parker notes, "'a substantive due process analysis is not available where a more specific constitutional standard is directly applicable.'"  (R&R (Dkt. No. 87) at 14 (quoting <u>Hickey v. City of New York</u>, No. 01 Civ. 6506 (GEL), 2004 WL 2724079, at *18 (S.D.N.Y. Nov. 29, 2004)))  Because Plaintiff's due process claim is premised on the same facts as his unlawful search claim, Judge Parker concludes that "Plaintiff's due process claim as articulated in the TAC is without merit because unlawful searches fall within Section 1983 claims – governed by the Fourth Amendment."  (<u>Id.</u> at 14-15)

As to Plaintiff's allegations that he was harmed by NYPD policies, procedures, and practices, Judge Parker infers that Plaintiff is referencing errors in the Domestic Incident Report.  (<u>Id.</u> at 15; <u>see</u> TAC (Dkt. No. 75-1) ¶ 169(b))  The DIR does not disclose that (1) Plaintiff feared for his safety during the encounter inside his apartment; (2) the officers entered his apartment without consent or warrant; (3) Plaintiff had full custody of his daughter at the time of the incident; and (4) the officers threatened to put Plaintiff in jail if he did not provide proof of custody.  (R&R (Dkt. No. 87) at 15 (citing TAC (Dkt. No. 75-1) ¶¶ 73-76, 220))

Judge Parker concludes that the officers' failure to include this information in the DIR does not shock "'the contemporary conscience'" and thus does not give rise to a due process claim.  (<u>Id.</u> (quoting <u>Okin v. Vill. of Cornwall-On-Hudson Police Dep't</u>, 577 F.3d 415, 431 (2d Cir. 2009)))

To the extent that Plaintiff seeks to buttress his due process claim by alleging that Defendants discriminated against him because he is an African-American male, Judge Parker notes that the TAC contains only conclusory allegations of discriminatory animus.  (Id.)

For these reasons, Judge Parker recommends that leave to amend be denied as to Plaintiff's due process claim.  (Id.)

### e.   *Monell* Claim

Judger Parker notes that the TAC contains no new substantive factual allegations concerning Plaintiff's claim under Monell v. Department of Social Services, 436 U.S. 658 (1978).  (R&R (Dkt. No. 87) at 16)  To meet the Monell test, a plaintiff must show "'that the deprivation of his constitutional rights was 'caused by a governmental custom, policy, or usage of the municipality.'"  (Id. (quoting Deferio v. City of Syracuse, 770 F. App'x 587, 589 (2d Cir. 2019)))  Although Plaintiff attaches as exhibits to the TAC "news articles discussing unrelated policies, disciplinary records of the officers at issue, and statistics about use of force," Judge Parker finds that none of these exhibits set out a governmental custom, policy, or usage.  (Id.) Accordingly, Judge Parker recommends that Plaintiff's motion to amend be denied with respect to his Monell claim.  (Id. at 17)

### 3.   Plaintiff's Section 1985 Conspiracy Claim

As to Plaintiff's Section 1985 conspiracy claim, Judger Parker observes that the TAC does not plead any new factual allegations in support of this claim.  Judge Parker therefore recommends that leave to amend be denied as to this claim.  (Id.)

### D.   Plaintiff's Objections

Plaintiff filed objections to Judge Parker's R&R on May 5, 2020, and he filed supplemental objections on May 12, 2020.  (Plft. Obj. (Dkt. No. 88); Pltf. Supp. Obj. (Dkt. No.

91))  Plaintiff objects to the R&R to the extent that it recommends that he be denied leave to amend as to any claim other than the unlawful search claim against Sergeant Bautista.

On May 26, 2020, Defendants filed an opposition to Plaintiff's objections. Defendants contend that Judge Parker's R&R should be adopted in its entirety.  (Def. Opp. (Dkt. No. 95))

## DISCUSSION

I.  **LEGAL STANDARD**

A.  **Review of Report and Recommendation**

A district court reviewing a magistrate judge's report and recommendation "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1)(C).  When a timely objection has been made to a magistrate judge's recommendation, the district court judge "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."  Id.  However, "[o]bjections that are 'merely perfunctory responses argued in an attempt to engage the district court in a rehashing of the same arguments set forth in the original [papers] will not suffice to invoke de novo review.'"  Phillips v. Reed Grp., Ltd., 955 F. Supp. 2d 201, 211 (S.D.N.Y. 2013) (quoting Vega v. Artuz, 2002 WL 31174466, at *1 (S.D.N.Y. Sept. 30, 2002)) (alteration in Phillips).  "To the extent . . . that the party . . . simply reiterates the original arguments, [courts] will review the Report strictly for clear error." Indymac Bank, F.S.B. v. Nat'l Settlement Agency, Inc., 07 Civ. 6865 (LTS), 2008 WL 4810043, at *1 (S.D.N.Y. Nov. 3, 2008) (citing Pearson-Fraser v. Bell Atl., No. 01 Civ. 2343 (WK), 2003 WL 43367, at *1 (S.D.N.Y. Jan. 6, 2003); Camardo v. Gen. Motors Hourly-Rate Employees Pension Plan, 806 F. Supp. 380, 382 (W.D.N.Y. 1992)); see also Ortiz v. Barkley, 558 F. Supp.

2d 444, 451 (S.D.N.Y. 2008) ("Reviewing courts should review a report and recommendation for clear error where objections are 'merely perfunctory responses,' . . . 'rehashing . . . the same arguments set forth in the original petition.'") (citing Vega, 2002 WL 31174466, at *1; Greene v. WCI Holdings, 956 F. Supp. 509, 513 (S.D.N.Y. 1997)).

For portions of the R&R to which no timely objection is made, a Court's review is limited to a consideration of whether there is any "'clear error on the face of the record'" that precludes acceptance of the recommendations.  Wingate v. Bloomberg, 2011 WL 5106009, at *1 (S.D.N.Y. Oct. 27, 2011) (quoting Fed. R. Civ. P. 72(b) advisory committee note; citing Nelson v. Smith, 618 F. Supp. 1186, 1189 (S.D.N.Y. 1985) ("To accept the report and recommendation of a magistrate, to which no timely objection has been made, a district court need only satisfy itself that there is no clear error on the face of the record.")).

### B.   Motion to Amend

District courts "ha[ve] broad discretion in determining whether to grant leave to amend," Gurary v. Winehouse, 235 F.3d 793, 801 (2d Cir. 2000), and "leave to amend should be freely granted when 'justice so requires.'"  Pangburn v. Culbertson, 200 F.3d 65, 70 (2d Cir. 1999) (quoting Fed. R. Civ. P. 15(a)); Rachman Bag Co. v. Liberty Mut. Ins. Co., 46 F.3d 230, 234 (2d Cir. 1995) ("The Supreme Court has emphasized that amendment should normally be permitted, and has stated that refusal to grant leave without justification is 'inconsistent with the spirit of the Federal Rules.'" (quoting Foman v. Davis, 371 U.S. 178, 182 (1962))).

A court may properly deny leave to amend, however, in cases of "'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.'"  Ruotolo v. City of New York, 514 F.3d 184, 191

(2d Cir. 2008) (quoting <u>Foman v. Davis</u>, 371 U.S. 178, 182 (1962)).  "'Where it appears that granting leave to amend is unlikely to be productive, . . . it is not an abuse of discretion to deny leave to amend.'"  <u>Lucente v. Int'l Bus. Machs. Corp.</u>, 310 F.3d 243, 258 (2d Cir. 2002) (quoting <u>Ruffolo v. Oppenheimer & Co.</u>, 987 F.2d 129, 131 (2d Cir. 1993) (per curiam)).

"[A party] opposing a motion to amend . . . bears the burden of establishing that an amendment would be futile."  <u>Bonsey v. Kates</u>, No. 13 Civ. 2708 (RWS), 2013 WL 4494678, at *8 (S.D.N.Y. Aug. 21, 2013) (citing <u>Blaskiewicz v. Cty. of Suffolk</u>, 29 F. Supp. 2d 134, 137-38 (E.D.N.Y. 1998)).  "Ordinarily, leave to amend may be denied on the basis of futility if the proposed claim would not withstand a Rule 12(b)(6) motion to dismiss."  <u>Summit Health, Inc. v. APS Healthcare Bethesda, Inc.</u>, 993 F. Supp. 2d 379, 403 (S.D.N.Y. 2014), <u>aff'd sub nom.</u> <u>APEX Employee Wellness Servs., Inc. v. APS Healthcare Bethesda, Inc.</u>, 725 F. App'x 4 (2d Cir. 2018) (citing <u>Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals</u>, 282 F.3d 83, 88 (2d Cir. 2002)).

## C.   *Pro Se* **Pleadings**

Although <u>pro se</u> plaintiffs are subject to the same standards set forth above, a <u>pro se</u> plaintiff's complaint must be construed liberally and interpreted as raising the strongest arguments it suggests.  <u>Hill v. Curcione</u>, 657 F.3d 116, 122 (2d Cir. 2011) (noting that in "review of the sufficiency of a <u>pro se</u> complaint . . . [courts] are constrained to conduct [their] examination with 'special solicitude'") (citing <u>Triestman v. Fed. Bureau of Prisons</u>, 470 F.3d 471, 474 (2d Cir. 2006)); <u>see</u> <u>Tracy v. Freshwater</u>, 623 F.3d 90, 101 (2d Cir. 2010) (discussing reasons why "a court is ordinarily obligated to afford a special solicitude to <u>pro se</u> litigants").  The Second Circuit has cautioned that district courts "'should not dismiss [a <u>pro se</u> complaint] without granting leave to amend at least once when a liberal reading of the complaint gives any

indication that a valid claim might be stated.'" <u>Cuoco v. Moritsugu</u>, 222 F.3d 99, 112 (2d Cir.

2000) (quoting <u>Gomez v. USAA Fed. Sav. Bank</u>, 171 F.3d 794, 795 (2d Cir. 1999)).

## II.   <u>ANALYSIS</u>

### A.   <u>State Law Claims</u>

Judge Parker correctly found that leave to amend should be denied with respect to

Plaintiff's state law claims.  (R&R (Dkt. No. 87) at 7-9)  Given that this Court did not grant

Plaintiff leave to move to amend as to these claims, Plaintiff's motion may be denied on this

basis alone.  <u>See Arroyo-Horne v. City of New York</u>, No. 16-CV-3857 (MKB), 2019 WL

3428577, at *4 n.2 (E.D.N.Y. July 30, 2019) ("'[D]istrict courts in this Circuit have routinely

dismissed claims in amended complaints where the court granted leave to amend for a limited

purpose and the plaintiff filed an amended complaint exceeding the scope of the permission

granted. . . .'") (quoting <u>Palm Beach Strategic Income, LP v. Salzman</u>, 457 F. App'x 40, 43 (2d

Cir. 2012)).

Moreover, the TAC does not contain any allegations suggesting that Plaintiff

complied with New York's notice of claim requirements.  (Sept. 9, 2019 Order (Dkt. No. 72) at

25-26)  Plaintiff does not dispute that his notice was defective because it lacked information

about "the time when, the place where and the manner in which the claim arose."  N.Y. Gen.

Municipal L. § 50-E(2) <u>see</u> TAC (Dkt. No. 75-1) ¶¶ 22, 236; Pltf. Supp. Obj. (Dkt. No. 91) at 14-

16; Sept. 9, 2019 Order (Dkt. No. 72) at 25-26.  Although Plaintiff argues that his time to file a

notice should extend beyond the 90-day limit because he was not immediately aware of errors in

the Domestic Incident Report (TAC (Dkt. No. 75-1) ¶ 22(d)-(e)), he concedes that he had

knowledge of those errors approximately two months before the 90-day deadline.  (<u>Id.</u> ¶ 22(d))

In any event, knowledge of errors in the DIR was not necessary for Plaintiff to set forth in his

notice "the time when, the place where and the manner in which the claim arose."  N.Y. Gen.

14

Municipal L. § 50-E(2).  For these reasons, and for the reasons set forth in this Court's

September 9, 2019 order (Dkt. No. 72 at 25-26), leave to amend is denied with respect to

Plaintiff's state law claims.

###    B.    Section 1983 Claims

####       1.    Unlawful Search

Judge Parker correctly concludes that any motion to amend as to Plaintiff's

unreasonable search claim against Sergeant Bautista should be denied.  (R&R (Dkt. No. 87) at 9)

As the R&R notes, the TAC does not contain any new allegations implicating Sergeant Bautista

in the alleged unlawful search.  (Id.)  Moreover, Plaintiff does not – in any way that is

discernable to this Court – object to the dismissal of this claim.  (Pltf. Obj. (Dkt. No. 88); Pltf.

Supp. Obj. (Dkt. No. 91); Pltf. Reply (Dkt. No. 97))  Accordingly, leave to amend with respect to

any unlawful search claim against Sergeant Bautista will be denied.  Roberts v. New York, No.

1:12-CV-0046 MAD/CFH, 2015 WL 1285723, at *3 (N.D.N.Y. Mar. 20, 2015) ("[B]ecause the

proposed amended complaint added no new facts or allegations, the Court finds that [the]

Magistrate Judge . . . did not err in denying Plaintiffs' motion to amend.").

####       2.    False Arrest Claim Against Officer Cadavid

Judge Parker recommends that Plaintiff's motion be granted as to his false arrest

claim against Officer Cadavid.  (R&R (Dkt. No. 87) at 9-11)  As the R&R notes, the TAC

alleges that (1) Officer Cadavid forced his way into Plaintiff's apartment, (2) Officer Cadavid

refused to let Plaintiff leave his own apartment, (3) Officers Cadavid and Trigueno blocked the

entryway of Plaintiff's apartment, and (4) Plaintiff was confined in his apartment for 63 minutes.

(Id. at 11 (citing TAC (Dkt. No. 75-1) ¶¶ 117, 156-57, 161))  Defendants have not objected to

Judge Parker's recommendation that Plaintiff be permitted to proceed with this claim (Def. Opp.

(Dkt. No. 95)), and the Court finds no clear error in the R&R on this point.  See Scott, 2017 WL 1194490, at *18 ("False arrest claims . . . 'may be complete without either a formal arrest or a detention until the subject is arraigned.' . . . Thus, an arrest 'may occur even if the formal words of arrest have not been spoken provided that the subject is restrained and his freedom of movement is restricted.'") (quoting Posr, 944 F.2d at 96-98).  Plaintiff may therefore amend the SAC to add a false arrest claim against Officer Cadavid.

### 3.   Excessive Force Claim Against Officer Cadavid

Judge Parker correctly concludes that Plaintiff has not alleged facts sufficient to make out an excessive force claim against Officer Cadavid.  (R&R (Dkt. No. 87) at 12-13)  Plaintiff claims that Officer Cadavid used excessive force when he "used his foot to prevent the door of Plaintiff's apartment from closing" and then pushed open the door, causing it to strike Plaintiff and knock him backward.  (TAC (Dkt. No. 75-1) ¶¶ 45-47)  Although Plaintiff alleges that he sought psychiatric treatment and was diagnosed with PTSD after the November 5, 2016 incident (Dkt. Nos. 91-1, 91-2), Plaintiff does not claim that he suffered any physical injury as a result of Officer Cadavid's conduct.  (Pltf. Obj. (Dkt. No. 88) at 3 ("Plaintiff's injuries are not visible to the naked eye and are not directly physical in nature"))  Plaintiff's excessive force claim is therefore deficient.  See, e.g., Vasquez v. Cty. of Rockland, No. 13 CIV. 5632 (SLC), 2020 WL 883514, at *8 n.13 (S.D.N.Y. Feb. 24, 2020) (emotional injuries "'cannot form the basis of an excessive force claim'") (quoting  D'Attore v. City of New York, No. 10 Civ. 6646 (WHP), 2013 WL 1180395, at *5 (S.D.N.Y. Mar. 15, 2013)); Davis v. United States, No. 03 CIV. 1800 (NRB), 2004 WL 324880, at *10 n.6 (S.D.N.Y. Feb. 19, 2004) ("Emotional pain and suffering cannot form the basis of an excessive force claim.").  Leave to amend is denied with respect to this claim.

16

4.     **Due Process Claim**

Judge Parker correctly finds that Plaintiff's motion should be denied with respect to his due process claim.  (R&R (Dkt. No. 87) at 14-15)  This claim is premised on the same facts that underlie Plaintiff's Section 1983 unlawful search claim.  (TAC (Dkt. No. 75-1) ¶ 169(b) (alleging in support of due process claim that Plaintiff was subject to an "unwarranted presumptively unreasonable search"))  Because Plaintiff's due process claim is premised on conduct that implicates the Fourth Amendment's protections from unlawful searches and seizures, his due process claim is not viable.  See, e.g., Cane v. New Britain Police Dep't, No. 3:16-CV-1638, 2017 WL 752278, at *4 (D. Conn. Feb. 27, 2017) ("[Plaintiff's] claims of false arrest, excessive force, [and] unreasonable search . . . in connection with the illegal entry onto his property are all covered by the Fourth Amendment's protections against unlawful searches and seizures.  Therefore, [he] cannot state a . . . due process claim."); Jackson ex rel. Jackson v. Suffolk Cty., 87 F. Supp. 3d 386, 399 (E.D.N.Y. 2015) ("[A] 'substantive due process analysis is not available where a more specific constitutional standard is directly applicable.' . . . [D]efendants' allegedly unreasonable search of plaintiffs' home and the circumstances of Jackson's arrest . . . are covered under the Fourth Amendment protections against unlawful search and seizure [and] false arrest. . . .") (quoting Hickey v. City of New York, No. 01 Civ. 6506 (GEL), 2004 WL 2724079, at *18 (S.D.N.Y. Nov. 29, 2004)).

To the extent that Plaintiff attempts to ground his due process claim on errors in the Domestic Incident Report (Pltf. Supp. Obj. (Dkt. No. 91) at 6; Pltf. Obj. (Dkt. No. 88) at 4), the alleged errors are not "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience."  Lombardi v. Whitman, 485 F.3d 73, 79 (2d Cir. 2007) (internal quotation marks omitted); see also R&R (Dkt. No. 87) at 15.

Finally, while Plaintiff alleges that he was mistreated because he is an African-American male, he makes only conclusory allegations that Defendants harbored discriminatory animus toward him.  Plaintiff also does not explain how his allegations about racial bias in policing – as a general matter – support his due process claim.  (TAC (Dkt. No. 75-1) ¶¶ 166, 169(b); Pltf. Supp. Obj. (Dkt. No. 91) at 6-7)  Plaintiff's motion to amend will be denied with respect to his due process claim.

### 5. *Monell* Claim

Judge Parker correctly concludes that leave to amend should be denied with respect to Plaintiff's *Monell* claim.  (R&R (Dkt. No. 87) at 16-17)

Attached to the TAC are the following exhibits:  news articles concerning unrelated NYPD policies, such as "stop and frisk" (Dkt. Nos. 75-4, 75-5); a press release about a federal probe into NYPD corruption (Dkt. No. 75-11; see also Dkt. No. 75-20); an article about an NYPD officer who was suspended for misconduct (Dkt. No. 75-10); demographic data concerning New York state (Dkt. No. 75-12); NYPD discipline statistics (Dkt. No. 75-15); and annual reports from the New York City Department of Investigation about topics such as "body-worn cameras," "use of force," and procedures for filing complaints against NYPD officers. (Dkt. Nos. 75-18, 75-19, 75-20)  None of these documents suggests that "a policy or custom within the [NYPD] . . . was affirmatively linked to the purported constitutional violations [that Plaintiff] suffered."  Carpinone v. City of New York, No. 11 CIV. 2074 PAE, 2012 WL 760073, at *2 (S.D.N.Y. Mar. 9, 2012); see also Daniels v. City of New York, No. 18-CV-3717 (RA), 2019 WL 1437586, at *4 (S.D.N.Y. Mar. 31, 2019) ("[A] plaintiff must allege a 'direct causal link between a municipal policy or custom and the alleged constitutional

deprivation. . . .'") (quoting <u>Berry v. Vill Of Millbrook</u>, 815 F. Supp. 2d 711, 717 (S.D.N.Y. 2011)).  Plaintiff's motion to amend will be denied as to his <u>Monell</u> claim.

     **C.**    <u>**Plaintiff's Section 1985 Conspiracy Claim**</u>

     Judge Parker correctly concludes that the TAC does not state a Section 1985 conspiracy claim.  (R&R (Dkt. No. 87) at 17)  "To establish a claim of conspiracy under section 1985, a plaintiff must show (1) a conspiracy between the defendants, (2) for the purpose of depriving him of equal protection of the laws or of equal privileges and immunities, and (3) an act taken in furtherance of the conspiracy, (4) which caused the plaintiff injury."  <u>Danielak v. City of New York</u>, No. 02-CV-2349 (KAM), 2005 WL 2347095, at *13 (E.D.N.Y. Sept. 26, 2005) (citing <u>Thomas v. Roach</u>, 165 F.3d 137, 146 (2d Cir. 1999)).  Moreover, a plaintiff must plead facts demonstrating that the conspirators were "motivated by 'some racial or . . . otherwise class-based, invidious discriminatory animus.'"  <u>Thomas</u>, 165 F.3d at 146 (quoting <u>Mian v. Donaldson, Lufkin & Jenrette Secs. Corp.</u>, 7 F.3d 1085, 1088 (2d Cir. 1993)).

     As discussed above, the TAC contains only conclusory allegations of discriminatory animus.  Even if the TAC did contain the necessary factual allegations, Plaintiff's Section 1985 claim would fail under the intra-corporate conspiracy doctrine.  The three individual defendants are all NYPD officers, and Plaintiff pleads no facts suggesting that any of the Defendants were motivated by an independent interest "wholly separate and apart from" the NYPD.  <u>See</u> <u>Danielak</u>, 2005 WL 2347095, at *14 (dismissing Section 1985 conspiracy claim against NYPD officers pursuant to the intra-corporate conspiracy doctrine, where plaintiff had not alleged "that any of the individual defendants possessed an independent, personal conspiratorial purpose or interest in plaintiff's arrest wholly separate and apart from the New

York City Police Department"). Plaintiff's motion to amend will be denied as to his Section 1985 conspiracy claim.

<b><u>CONCLUSION</u></b>

Judge Parker's R&R is adopted in its entirety. Plaintiff's motion to amend is granted only to the extent that he may file – by July 27, 2020 – a Third Amended Complaint that contains a false arrest claim against Officer Cadavid. The Third Amended Complaint filed by Plaintiff will contain only the following claims: (1) a Section 1983 unlawful search claim against Officer Cadavid and Officer Trigueno; (2) a Section 1983 false arrest claim against Officer Cadavid; and (3) a Section 1983 failure to intervene claim against Officer Trigueno based on the alleged unlawful search and false arrest.

Dated: New York, New York
        July 16, 2020

SO ORDERED.

_____
Paul G. Gardephe
United States District Judge