UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

**WENTWORTH RATTRAY**

                Plaintiff,

        -against-

**THE CITY OF NEW YORK**;
POLICE OFFICER JOSE **CADAVID**, BADGE NO. 9085,
IN HIS INDIVIDUAL AND OFFICIAL CAPACITY;
POLICE OFFICER SGT MERVIN **BAUTISTA**, IN
HIS INDIVIDUAL AND OFFICIAL CAPACITY;
POLICE OFFICER ALYSSA **TRIGUENO**, IN HER
INDIVIDUAL AND OFFICIAL CAPACITY.

                Defendants,

_____

**Third (3rd)**

**AMENDED COMPLAINT**

**AND JURY DEMAND**

**17-CV-8560** PGG

      Pro Se Plaintiff Wentworth Rattray alleges upon information, and belief, the following against Defendants, The City of New York, New York City Police Department (NYPD) Officers, Jose R Cadavid, Sgt. Mervin Bautista, and Alyssa Trigueno, that;

## JURISDICTION

1. Jurisdiction of this Court is invoked pursuant to:

   a. 28. U.S. Code § 1331, 1343;

   b. 42. U.S. Code § 1983 Civil action for deprivation of rights;

   c. 42 U.S. Code § 1981(a) Equal rights under the law;

   d. 42 U.S. Code § 1981(c) Protection against impairment under color of State law;

   e. Public Officers Law § 74 (3) Code of Ethics

   f. This action also arises under the Fourth and Fourteenth Amendments to the Constitution of the United States.  42 U.S. Code § 1981(a) Equal rights under the law and 42 U.S. Code § 1981(c) Protection against impairment under color of State law

## VENUE

2. Under 28 U.S.C. Sec. 1391(b), venue is proper in the Southern District of New York because the events giving rise to the plaintiffs' claims occurred within this Judicial District.

## **PARTIES**

3. Plaintiff Wentworth Rattray is a citizen of the United States. At all times here relevant:

   a. Plaintiff resided in New York City, County, and State of New York;

   b. Plaintiff had legal and physical custody of his minor child;

   c. Plaintiff had not been reported as committing any crime or offense against any person or against the state;

   d. Plaintiff stated to the mother and to Cadavid, Trigueno, and Sgt Hornandez on the relevant date, 11/05/2016, that Plaintiff had custody of the minor child and that the mother had no right to custody on that date.

   e.

4. That at all times relevant herein, Defendants Police Officers Jose R Cadavid, Sgt. Mervin Bautista, and Alyssa Triguena were duly appointed as police officers and were acting within the scope of their employment as employees of the New York City Police Department.

5. That at all times relevant herein the defendant police officers named herein, upon information and belief, were members of the New York City Police Department assigned to the 28th police precinct located in New York City, New York and were bound to operate under the US Constitution, the policies and procedures of rules of the NYPD as defined in the NYPD Patrol Guide [Appendix_2_N] generally ["TAC_NYPD Patrol_Guide-InvestigativeEncounters-2016"], and specifically[ "TAC_Appendix_2_N-NYPD Patrol_Guide-Investigative_Encounters-2016"]

6. That the defendant NYPD police officers involved in the incident underlying this lawsuit were at all times mentioned in this complaint, agents, servants, and employees, acting within the scope of their employment by Defendant City of New York, and were duly appointed police officers in the New York City Police Department acting within their individual, and official capacity, and under color of law, that

is under color of law of the Constitution, statutes, laws, charter, ordinances, rules, regulations, custom and usages of the State of New York, and the City of New York.

7.  That the Defendant, City of New York, is a municipal corporation within the State of New York.

8.  Pursuant to Section 431 of its Charter, the City of New York has established and maintains the New York City Police Department as a constituent department or agency.

9.  That on November 5th 2016 and at all times relevant hereto, the City of New York employed the defendant Police Officers (Police Officers Jose R Cadavid, Alyssa Trigueno, Sgt Hornandez, and Sgt Mervin Bautista) involved in this incident.

10.  That on November 5th 2016 and at all times relevant hereto, Defendant City of New York, acting through the New York Police Department (or "NYPD"), was responsible for the policies, practices, supervision, implementation, and conduct of the Defendant police officers.  These policies and practices are outlined in

11.  That at all times relevant hereto, Defendant City of New York, acting through the New York Police Department (or "NYPD"), was responsible for the New York City Police Department's policies, practices and procedures including the appointment, training, supervision, discipline and retention of the Defendant officers and of all NYPD officers, and dispatch personnel involved in the incidents complained of herein.

12.  That at all times relevant hereto, Defendant City of New York was responsible for establishing and enforcing the rules, policies, practices and procedures of the NYPD, and for ensuring that on-duty NYPD personnel obey the laws in accordance with the Constitution of the United States of America, the State of New York, as well as the NYPD's policies, practices and procedures.

13.  That NYPD Police Officer Jose R Cadavid upon information and belief was the responding male NYPD police officer who:

a.  Cadavid threatened to "take down the door" of Plaintiff's home if Plaintiff didn't open the door to speak with him.

b.  Cadavid asked if he could come in and look around after Plaintiff told Cadavid that the minor child was not at home.

c.  Cadavid struck Plaintiff with a door while Cadavid pushed his way into Plaintiff's residence after Plaintiff refused Cadavid's request to come in and look around.

d.  Cadavid conducted and unwarranted search of Plaintiff's home over Plaintiff's objections.

e.  Cadavid commanded Plaintiff to produce Plaintiff's identification over Plaintiff's strenuous objections.

f.  Cadavid retained Plaintiff's identification and remained inside Plaintiff's home for over 63 minutes.

g.  Cadavid stood within 5 feet of Plaintiff's person, at D in [Appendix 2 K] blocking Plaintiff's access to the path to exit the home.

h.  Cadavid read his badge number into the phone after Plaintiff called 911 to report that Cadavid had entered his home against his stated objection and was then standing inside Plaintiff's home and was refusing to leave.

i.  Cadavid refused Plaintiff's request that Cadavid leave Plaintiff's home.

j.  Cadavid refused Plaintiff's request that Plaintiff be allowed to leave Plaintiff's home.

**14.** That police officer Alyssa Trigueno upon information and belief, at all times relevant hereto, Officer Trigueno was the female NYPD police officer under the command of the 28th Precinct of the NYPD.

a.  Cadavid refused Plaintiff's request that Cadavid leave Plaintiff's home.

b.  Trigueno threatened Mr. Rattray by stating that if "[Plaintiff] didn't have a piece of paper saying that she's [the child] supposed to be with you [Plaintiff] we're going to take you [to jail] tonight". Plaintiff did not have a piece of paper matching the description of the NYPD officer.

**15.** That Defendant Trigueno is sued in her official capacity as an NYPD police officer in preparing the Domestic Incident Report (DIR# 2016-028-010736) that Plaintiff alleges was deliberately made incomplete, was inaccurate, and deliberately paints Plaintiff in an unfavorable and false light.

a) Plaintiff alleges that NYPD officer Trigueno failed a duty to intervene in officer Jose Cadavid's misconduct.

b) Plaintiff further alleges that Officer Trigueno failed to properly complete additional required paperwork as required by the New York Police Department Patrol Guide based on the facts of the incident and as required by the court-ordered monitor resulting from the Floyd case.

c) Plaintiff further alleges that Officer Trigueno discriminated against plaintiff based on Plaintiff's sex resulting in Trigueno creating only documentation that worked against Plaintiff's custody interest in favor the female parent's interest and creating no documentation of the facts known to her at the time of creating the report after the incident;

**16.** That Defendant officer Sgt. Mervin Bautista was, at all times here relevant, a Sargent of the NYPD, and as such was acting in the capacity of an agent, servant and employee of the City of New York.

**17.** That officer Bautista was responsible for supervising the conduct of the officers including reviewing their reports for completeness and accuracy as to the facts known to him and them.

**18.** That Sargent Bautista is <u>not</u> sued in his official capacity for failing to review available records to ensure that officers under his supervision are performing their duties in accordance with Federal and State laws.

**19.** All other individual defendants ("the officers"), individuals whose names are currently unknown to plaintiff, are employees of the NYPD, and are sued in their individual and official capacity.

**20.** At all times here mentioned defendants were acting under color of state and local laws, ordinances, and guides, to wit, under color of the statutes, ordinances, regulations, policies, customs and usages of the City of New York, the State of New York and New York City's Police Department (NYPD).

## PRELIMINARY STATEMENT

21. This is a civil rights action in which Plaintiff seeks relief for injuries including emotional distress and financial injuries resulting from a violation of his civil rights secured under the provisions of 42 U.S.C. Section 1983, and under the Fourth, and Fourteenth Amendments to the Constitution of the United States.

## **FACTUAL ALLEGATIONS**

22. On November 5, 2016, at approximately 6:52 p.m. Plaintiff, Mr. Rattray, was retrieving his mail inside his residential apartment complex located at 42 West 120th Street, New York, New York when Plaintiff observed Wendy Sandy, the mother of his child, standing outside his lobby door.

23. That the Plaintiff and Ms. Wendy Sandy, together have a minor child in common for which Mr. Rattray was granted full "Legal, Physical and Residential Custody of the minor child as set forth in the "Final Order of Custody and Visitation as Amended per the Honorable J. Machelle Sweeting Family Court judge State of New York, County of New York on December 22, 2016. **See Exhibit "A".**

24. That on November 5, 2016, Plaintiff had legal custody of his minor daughter for which the mother, Wendy Sandy was granted visitation by the Family Court on November 7, 2016.

25. The Family Court order on November 7, 2016, was ordered "Nunc pro tunc" to October 24, 2016. See **Appendix 1** **Exhibit "B".**

   a) That based on the Family Court Order, Wendy Sandy did not have the legal right to visit her daughter on November 5, 2016, without consent of the Plaintiff.

   d) That Wendy Sandy stated that she was there to pick-up her child and demanded that Plaintiff bring the minor child to her in the lobby of his apartment building.

   e) That Plaintiff, Mr. Rattray, informed Ms. Wendy Sandy that she did not have the right to pick up her daughter that day per order of the Court.

f)  That Plaintiff informed Ms. Wendy Sandy that she must comply with the court order and that she was requesting an unscheduled visit with her daughter, with no prior notice to Plaintiff and on a day that was not recognized by Judge Sweeting of the Family Court.

g)  Plaintiff, while standing inside the lobby explained to the mother that the child was not available because the child was not home and that if the mother wants to request an unscheduled visit, she should arrange it ahead of time through her attorney.

h)  That Plaintiff retreated into the building and into his apartment and sent an email to the family court, the mother's attorney and the Attorney for child notifying them that Ms Wendy Sandy was attempting an unscheduled pick-up.

26. That shortly before 7:00 p.m., two NYPD officers rang Plaintiff's doorbell and announced themselves as police officers and asked to speak with the Plaintiff.

a)  Plaintiff asked the officer what this was about, and the officer stated that the child's mother was downstairs to pick up the minor child.

b)  That the male officer (Jose R Cadavid), asked Plaintiff to open the door so they could talk, Plaintiff refused and said he could hear them clearly from inside his apartment.

c)  Officer Jose Cadavid said he wasn't going to talk to Plaintiff through the door, and threatened Plaintiff stating "you want us to take-down the door?"

d)  That Plaintiff was made fearful for his immediate safety and for the well-being of himself as well as for the security of the home he shares with his minor child if the door were to be damaged if Officer Jose Cadavid made good on his threat.

e)  As a direct result of Cadavid's threat to "take down the door" Plaintiff, Mr. Rattray, opened the door, and stood at the doorway  [Appendix 2 K], still two-three feet inside his home  at "C" and explained to the two-armed NYPD police officers who were standing just outside the door (at "A" and "C") and within 4 feet of Plaintiff, that the mother was either mistaken, or was deliberately creating conflict to help her position in the ongoing case in Family Court.

**27.** After several minutes of discussions officer Cadavid asked Plaintiff to bring the child to the door, Plaintiff refused and explained that the child was not home.

**28.** That armed NYPD police officer Jose R Cadavid asked if he could "come in and look around", Plaintiff refused Jose Cadavid's request.

**29.** That Defendant, armed NYPD police officer Alyssa Trigueno, stated that if Plaintiff didn't have papers saying that the child should be with Plaintiff, then Plaintiff would be going to jail.

    a.  Plaintiff did not have papers to give to officer Trigueno.

    b.  Plaintiff felt threatened and feared for his safety.

    c.  While still standing inside the apartment Plaintiff asked the officers who were still outside the apartment if they, or anyone else, had papers saying that the child should be with someone else.

**30.** Plaintiff then asked to speak to a NYPD supervisor, and moved to end the conversation by closing the front door of his apartment.

**31.** That while Plaintiff's hand and body were still leaning on the door and moving to close it; NYPD police officer Jose Cadavid used his foot to prevent the door of Plaintiff's apartment from closing.

**32.** That while Plaintiff's hand and body were still leaning on the door and moving to close it; NYPD police officer Jose Cadavid used his foot to prevent the door of Plaintiff's apartment from closing.

**33.** That while Plaintiff's was still holding onto and still attempting to close the door to his apartment, Plaintiff moved closer to the door to see what was blocking it, at which point NYPD police officer Jose Cadavid forcefully pushed the door open and into Plaintiff's hand and body. NYPD police officer Jose R Cadavid then struck Plaintiff with the metal door of the apartment knocking Plaintiff backward into the apartment to position "D" of [TAC_Appendix_2_K-NYPD Measured photos of floor of apartment 3C].

**34.** Plaintiff Rattray was shocked, dismayed, fearful, and grew angry at being struck without provocation by NYPD police officer Jose Cadavid and at what Plaintiff considered an unlawful armed intrusion into his home by Defendant NYPD police officer Jose Cadavid.

    a.  Plaintiff was aware that the officers were both armed so Plaintiff anguished as he worked to control his own emotions and suppress his instinct to fight-off the attacking officer in order to protect himself and his home.

    b.  Plaintiff retreated into his apartment as Defendant Jose Cadavid pushed the door against Plaintiff's hand and Plaintiff stepped aside to avoid direct contact with Defendant, Officer Jose Cadavid as Cadavid made an aggressive advance into Plaintiff's apartment.

    c.  Plaintiff remained standingduring NYPD police officer Jose Cadavid's subsequent unwarranted, and presumptively unreasonable, search of Plaintiff's home.

**35.** Over Plaintiff's stated objection, Officer Jose Cadavid then conducted an unwarranted and presumptively unreasonable room-by-room search of Plaintiff's home.

    a.  NYPD Officer Jose Cadavid walked into Plaintiff's minor child's bedroom, looked in her closet, walked into Plaintiff's room looked in plaintiff's closet, walked through the kitchen, into the bathroom, then returned to the living room without consent of Plaintiff Mr. Rattray.

    b.  NYPD Officer Jose Cadavid ordered Plaintiff to produce Plaintiff's identification.  Plaintiff challenged Cadavid as to why Cadavid needed Plaintiff's identification since Plaintiff was at home and had done nothing wrong. Cadavid stated that he needed to know who he was dealing with.  Plaintiff challenged that Cadavid was already standing in Plaintiff's living room and it seems a competent law enforcement officer would know who's home he had entered.  Cadavid insisted that Plaintiff provide his identification.

    c.   Plaintiff asked Cadavid if Plaintiff could retrieve his wallet to present his ID.  Officer Cadavid consented and Plaintiff then retrieved his wallet from a table 5 feet from where Plaintiff was standing and presented NYPD Officer Jose Cadavid with his identification.

    d.   Plaintiff then asked that his identification be returned and Cadavid refused.

36. That officer Jose Cadavid did not have a warrant to either enter or search Plaintiff's residence and that the Defendants lacked probable cause, exigence, or any complaint giving rise to a need to enter Plaintiff's home over Plaintiff's stated objections.

55. That while standing inside Plaintiff Rattray's living room and while officer Jose Cadavid blocked Plaintiff's access to the doorway from inside the apartment with Officer Trigueno blocking the doorway from outside the apartment, Cadavid kept Plaintiff's identification in his possession while he continued to interrogate Plaintiff as to who else lives in the home and as to the whereabouts of Plaintiff's minor child.

37. Plaintiff reiterated that as Plaintiff initially stated and as Cadavid's unwarranted search revealed, the child was not home. Plaintiff then demanded that Cadavid leave his home. Cadavid repeated his questioning as to where the minor child was, who she was with. Plaintiff asked Cadavid if he knew her friends.

    a.   Plaintiff informed Cadavid that Plaintiff's minor child was on a playdate and would not be made available to him or anyone else in NYPD because the child was safe where she was, that she was where she needed to be.

38. Plaintiff was now afraid for his own safety and refused to allow the officers any access to his minor child for fear that she would me manhandled by NYPD officers and removed from the state by the mother against Plaintiff's wishes.

39. Plaintiff informed the officer that he had no right to be in Plaintiff's home and explicitly told officer Jose Cadavid to leave Plaintiff's apartment.

40. Plaintiff grew more fearful for his safety and for the safety of his child and reiterated that the minor child was not home, that she was where she needed to be, and that she was safe.

41. After several minutes Plaintiff again demanded that NYPD officer Jose Cadavid return his identification and leave Plaintiff's apartment.  Officer Cadavid again refused to leave the apartment and refused to return Plaintiff's identification but continued asking Plaintiff questions, such as, Who else lives in the apartment? and Who the minor child was with?

42. After approximately 10 minutes Plaintiff became even more terrified by the realization of his vulnerability as an unarmed black-male being warrantlessly detained in his home by two armed police officers making demands that he is unable to comply with;

   a. Plaintiff realized that he was alone with the two officers, that there were no witnesses, and Plaintiff's memory surfaced recent media-reports of several recent incidents where unarmed black males were inexplicably shot by police officers.

   b. Plaintiff was aware that police arrest and kill black males at far higher rates than any other group and that police violence disproportionately impacts black males, and disproportionately in urban areas [Appendix 2 E].

   c. Plaintiff became even-more concerned for Plaintiff's own safety.

   d. Plaintiff then asked Officer Cadavid for permission to retrieve his phone from a table 5-feet from where Plaintiff was sitting.  Officer Cadavid consented and Plaintiff carefully retrieved his phone and used that phone to place a recorded 911-call to report that there were two NYPD officers at Plaintiff's home; that one of the officers had illegally entered and searched his home and that that officer was still refusing to leave [See Appendix_1_TAC **Item B** *Pg. 2-3* of Transcript of 911 call(s) Event Chronology – D16110518835 [3] pages (starting at:19:12:25 and ending at 20:15:25)].

43. That when the 911 operator asked who the officers were, Officer Jose Cadavid read his badge number into the recorded 911-call on Plaintiff's phone in a strong clear voice while standing inside Plaintiff's

home.   Officer Jose Cadavid remained inside the apartment, within six-feet of Plaintiff, positioned between Plaintiff and physically blocking the front door and any other egress from Plaintiff's apartment.

    a.  Plaintiff asked the 911-operator to stay on the line until the officers left or until the supervisor arrived.

    b.  The 911 operator remained on the line until the NYPD Sgt was almost on site.

44. That the 911-Call System recorded the events in the room over the full duration of the 63-minute period of the call and captured audio of Plaintiff asking to have a supervisor report to the scene to remove the officers and the 911 operator offered to send assistance via a supervisor or someone from internal affairs. The 911 operator remained on the open telephone line with the 911 system recording the events in the room until the supervisor arrived at the scene 63 minutes later.

45. During this time Plaintiff repeatedly demanded that NYPD Police Officer Jose Cadavid leave his apartment to which Officer Jose Cadavid repeatedly refused and demanded Plaintiff answer his questions.

    a.  Plaintiff asked Officer Jose Cadavid if Plaintiff could leave the apartment again Officer Cadavid refused stating that since Plaintiff "got downtown involved" Plaintiff would have to wait until a supervisor showed up.

    b.  Plaintiff asked Cadavid what he would do if Plaintiff came to his home and searched it looking for his daughter to which NYPD Police Officer Jose R Cadavid asserted his official authority to conduct the search and detention based on his experience and belief.

46. That NYPD police officer Jose Cadavid either a) discriminately relied on the statements of Plaintiff's child's mother over Plaintiff's own statements in deciding to force his way into Plaintiff's apartment over Plaintiff's explicit verbal objection, after being informed that the child was not home, and after being informed by both the mother and by Plaintiff that Plaintiff was the child's father, and that that discrimination was based on Plaintiff's race and/or sex/gender; or b) Cadavid decided discriminately

decided to enter Plaintiff's home to find the child in the belief that Plaintiff was unlikely to have custody of his child; c) or Cadavid decided that Plaintiff not being truthful and that Plaintiff as a black-male was a threat to his own minor female child; or Cadavid used other impermissible methods for deciding to conduct a presumptively unreasonable search of Plaintiff's his home and for seizing Plaintiff in his home.

    a.  That Officer Cadavid's use of force was objectively unreasonable under the circumstances and a) introduced unnecessary danger into an otherwise benign situation b) caused Plaintiff to be assaulted by officer Cadavid, exposed Plaintiff to risk of great harm.

    b.  Plaintiff grew angry and frustrated that, two armed NYPD Police officers, Cadavid and Trigueno, seemed to prioritize what they believed to be the foreign-state female parent's parental interests over those of the home-state male parent's rights based solely on their bias expectations against Plaintiff's.

    c.  Plaintiff felt that these biases against believing Plaintiff's when he told the officers that he was the custodial parent and that the child was not home, were based on Plaintiff's gender and race and worked against Plaintiff's safety, security, parental, and custodial interests.

47. That officer Jose Cadavid displayed a disregard for the constitutional rights and the safety and welfare of the occupants of the apartment. Plaintiff was exposed to a great risk of harm, Plaintiff's right to custody was interfered with, and the welfare of the minor child would have been harmed if the child had been in the apartment.

48. That Plaintiff fearful and grew angry that even if the mother had any right to access the child, and even if the child had been home, that Cadavid's use of force to enter the apartment, ostensibly to remove the child would have placed Plaintiff's minor child at great risk of harm.

49. Three years after the night of that incident Plaintiff continues to have recurring dreams and nightmares of alternate scenarios; some ending with Plaintiff being shot by a faceless armed NYPD officer; others

looping over-and-over with me alternately letting them in and they still don't leave, me opening the

front door right away and letting them look around, and they still don't leave, me giving them the address

of the playdate and they send a car to check on my daughter and she gets hurt; where my daughter is

home and they take her out of the apartment and I can't find her or she gets hurt.

    a. That now, when Plaintiff is awake, though aware that these recurring nightmares are not real,
their vivid nature while sleeping continue to have powerful visceral effects on Plaintiff's psyche
during Plaintiff's waking hours.

    b. After satisfying himself that the minor child was not in the apartment, Officer Jose Cadavid
remained in Plaintiff's home over Plaintiff's stated objections and displayed a total disregard for
the sanctity of Plaintiff's privacy and sense of security in his own home.

50. NYPD officers Jose Cadavid, Alyssa Trigueno, nor Sgt Hornandez, the responding on-scene Sargent,
were aware that the mother had no right to custody and no visitation on that date at the conclusion of
the interaction. NYPD officers against NYPD policy neglected to notify Plaintiff Rattray that a
Domestic Incident Report (DIR) would be filed or that Plaintiff could receive a copy of that report.

    a. Plaintiff became aware that a domestic incident report was likely filed against himself, Plaintiff
visited the 28th Precinct to get a copy of the report to understand what had been recorded.

    b. The 28th Precinct desk officer refused to provide a copy of the report but provided information
on the names of the officers involved that evening (PO Trigueno, PO Cadavid, and Sgt.
Hornandez) along with the identification number of the Domestic Incident Report (DIR#2016-
028-10736).

51. That Plaintiff, Mr. Rattray, has become fearful of police officers in the City of New York after the
unwarranted, presumptively unreasonable actions of the Defendant Officer Jose Cadavid.

52. That Plaintiff's behavior towards the New York City Police Department has changed significantly due
to the actions of the Defendant police officers in that Plaintiff feels threatened, repeated mental distress

and apprehension during sleep, and when faced with police presence in close proximity during his commute on the street, through stations, and on trains.

53. Plaintiff has observed an increase in police presence outside his apartment building causing Plaintiff increased anxiety and worry. Plaintiff now has cause to worry about the motives of the squad cars parked on Plaintiff's block.

54. Plaintiff has required medical treatment due to the harm caused Plaintiff by the Defendant NYPD Police Officer Jose Cadavid.

55. Plaintiff now wakes-up at night from recurring dreams of alternate ways that that evenings unprovoked encounter could have ended with Plaintiff being shot, in his apartment, while doing everything that he could to stay safe, and to keep his child safe.

56. That to the extent the Officer Jose Cadavid failed to get assistance from a supervisor or from the New York City's Administration for Children Services (ACS), prior to entering Plaintiff's residence and before taking matters into his own hands on that evening is indicative of a failure in policing.

57. That at all times during the events described herein, the defendants were engaged in a joint venture and formed an agreement to violate Plaintiff's constitutionally protected rights.

58. That the Defendant officers assisted each other in performing the various unlawful actions described herein and lent their physical presence and support and the authority of their office to each other during the stated events described herein.

59. That Defendant Mervin Bautista, supervisor who signed off on the NYPD Domestic Incident Report willfully, and intentionally, failed to include in the report that the Defendant officers had forced their entry into the Plaintiff's residence without a warrant and without legal justification.

60. That Defendant Bautista minimized the officer's actions and instructed the officers to fill out a DIR (Domestic Incident Report) but failed to ensure it had pertinent details (e.g., the report fails to mention

that the officers entered Plaintiff's apartment without consent and without a warrant. See "**Exhibit C**" Event Chronology at 19:12:25 (7:12pm)**.**

61. The Defendant Mervin Bautista willfully and intentional failed to include in the Domestic Incident Report that the mother of Plaintiff's minor child was mistaken about having visitation that day and that there was no legal justification for the officers to have entered Plaintiff's apartment with unreasonable use of force. **Id.**

62. That the DIR falsely stated that the mother and Plaintiff had joint custody of their minor child.

   a.  That the Defendant officers knew this statement was inaccurate prior to leaving Plaintiff's home because they were told by Plaintiff and the Sgt. reviewed information to convince the Sgt that the mother had no custody of the minor child and no visitation on that date.

63. That Mr. Rattray as the natural parent has overwhelmingly demonstrated sufficient commitment to his minor child, and is entitled to raise the child free from undue state interference.

64. The rights given by the Family Court in the matter of a Custody/ Visitation proceeding gave Plaintiff the unfettered right to the care, custody and nurture of his minor child and that such character cannot be denied without violating those fundamental principles of liberty and justice which lie at the base of civil and political institutions, and such right is a fundamental right protected by the Fourteenth Amendment to the Constitution of the United States.

65. That Mr. Rattray as the natural father of his minor child, enjoys the right to associate with his child which is guaranteed by the Fourteenth Amendment which is embodied in the concept of "liberty" as that word is used in the Due Process Clause of the 14th Amendment and Equal Protection Clause of the 14th Amendment.

66. That the parent-child relationship is a constitutionally protected liberty interest and that no state can deprive any person of life, liberty or property without due process of law nor deny any person the equal protection of the laws.

67. That the Defendant officers willfully and deliberately ignored Plaintiff's liberty interest in the parent child relationship.

68. The Defendant police officers willfully and intentionally omitted key facts of the incident.

69. That the omissions were intended to depict the Plaintiff as an individual engaged in criminal activity.

70. The Defendants, by their unlawful actions and the filing of misleading reports intended to portray the Plaintiff in a false light.

71. That the Defendants acted in concert with one another in an effort to create a misleading and incomplete official report of the incident.

72. That the New York City Police Department failed to adequately train and supervise its officers in the filing of police reports and in properly investigating incidents involving custody and visitation rights of parental disputes involving minor children.

73. That Defendant Jose Cadavid acted maliciously and with intent to violate Plaintiff's rights.

74. That Defendant officers failed to intervene in the obviously illegal actions of Defendant Jose Cadavid against Plaintiff.

75. That the 911 dispatcher (Operator ID#363714) at 18:52PM (event # D16110518835) labeled Plaintiff as the aggressor even though there was no aggression by either parent.

76. As a direct and proximate result of the acts of defendants, Plaintiff suffered injuries and damages:

77. That the Defendants violated Plaintiff's right to Due Process of Law under the Fourteenth Amendment to the Constitution of the United States.

78. That the Defendants violated Plaintiff's right to be free from unlawful search and seizures under the Fourth Amendment to the United States Constitution.

79. That the Defendants violated Mr. Rattray's New York State Constitutional rights under Article 1, Section 6 to due process;

80. Mr. Rattray was subjected to and suffered undue emotional trauma and suffering, including fear, embarrassment, humiliation, emotional distress, frustration, inconvenience, and anxiety.

81. New York City's failure to ensure that officers are properly trained puts Plaintiff at a disadvantage in any future custody proceedings since public records will likely be checked in any future custodial actions during a search for criminal activity or domestic incidents.

82. That assuming that the police records regarding the incident alleged are corrected, the experience continues to weigh on Plaintiff's mind particularly when Plaintiff observe police officers and it will continue to impact Plaintiff through-out Plaintiff's life since a police record search is one of the first things that will be checked by police officers responding to any future request for assistance going forward or by the courts in any future custody actions.

83. Officer Jose Cadavid's custodial interrogation of Plaintiff continued after coercing the Plaintiff to open the door, and forcibly entering the plaintiff's apartment against the plaintiff's explicit objection, after conducting and unwarranted search and a presumptively unreasonable seizure causing Plaintiff to feel helpless and suffer severe emotional distress.

84. That Defendant's actions adversely impact Plaintiff's ability to stand up for Plaintiff's rights or advocate on behalf of Plaintiff's child in the future particularly since no notification of the DIR report or report number was provided to Plaintiff and the key facts of the incident were omitted or obfuscated in a way so as to paint Plaintiff in a false light.

85. Plaintiff's standing in the eyes of the law is diminished given that there is now an unwarranted and recorded Domestic Incident Report (DIR) on file as a matter of public record without a corresponding record of the use of force documented in the report, and without the benefit of oversight by NYPD's court-appointed monitor.

86. That it has been almost 36 months since the incident and Plaintiff finds that Plaintiff still lives in fear of the police and Plaintiff is concerned that he may be targeted at home again or stopped on the street and forcefully detained until he is able to present Plaintiff's proof of custody.  Requiring Plaintiff to carry proof of custody with him is an undue burden that is not placed on female parents.

87. That officer Jose Cadavid's actions are part of a broader pattern of systemic abuse of police power that has become prevalent in this police precinct and most minority communities.

88. These incidents are often dismissed at times even when there is serious bodily injury unless there is also recorded video.

89. That officer Jose Cadavid's abuse of his position in this incident is not just a violation of plaintiff's individual constitutional rights; it is a symptom of one cause of the defect in broader police to community relations which has the disparate impact of leaving Plaintiff and his community less safe.

90. That officers Jose Cadavid, Trigueno, Sargent Bautista, The City of New York, and the New York Police Department have a duty as servants of the law to follow procedures that are put in place to protect the rights of all the citizens of the United States as outlined in the Constitution of the United States.

91. Officers Jose Cadavid, Trigueno, and Bautista failed their duty to faithfully execute the responsibilities of their position and to protect the rights of Plaintiff Rattray.

92. That the City of New York and the NYPD failed their duty to properly supervise, train or discipline the individual Defendant officers.

93. That the unlawful action by the Defendant police officers' overly aggressive actions, puts the lives of citizens in jeopardy and that those actions have a disparate impact on the lives of black males.

94. That there appears to be two standards for enforcing laws where the police are only held accountable when there is irrefutable video evidence of bodily injury but the citizens' rights are trampled at any whim of an officer, however unwarranted, flawed, or biased that whim may be.


**AS AND FOR A <u>FIRST</u> CAUSE OF ACTION AGAINST DEFENDANTS UNDER 42 U.S. C. SECTION 1983, FOR VIOLATING PLAINTIFF'S CONSTITUTIONAL RIGHTS UNDER THE FOURTH AMENDMENT TO THE CONSTITUTION OF THE UNITED STATES  AND UNDER THE <u>CONSTITUTION OF THE STATE OF NEW YORK ARTICLE 1 SECTION 12.</u>**


95. That Plaintiff repeats, reiterates and realleges each and every allegation contained in Paragraphs Numbered"1 through "94" with the same force and effect as though more fully set forth at length herein

96. That at all times herein mentioned the Plaintiff, was unlawfully seized, detained, restrained and held in custody on November 5, 2016.

97. That Defendants violated Mr. Rattray's Fourth Amendment right to be secure in his persons, houses, papers and effects, against unreasonable searches and seizure, and that no Warrant shall issue without probable cause supported by Oath or affirmation and particularly describing the place to be searched and the persons or things to be seized.

98. Plaintiff was made to fear for his life as a result of the Defendant's wrongful and unconstitutional actions described and set forth herein.

99. That plaintiffs suffered emotional pain, humiliation, and degradation, due to the Defendant's police officers illegal entry and invasion into Plaintiff's personal residence without a valid search warrant and without probable cause or legal justification.

100. That the Defendants and agents, intentionally, and without legal justification, including lack of probable cause, unlawfully, and unreasonably searched Mr. Rattray's residence without a warrant, and without Plaintiff's consent.

101. That the Defendants, their agents, servants and, or employees, intentionally, and without legal justification, including lack of probable cause, unlawfully, and unreasonably seized the plaintiffs during the Defendants forceful and unlawful entry into Plaintiffs, residence.

   a) Non Discrimination:

      a. Searches and seizures discriminately applied based on race constitutes a form of Racial Discrimination Prohibited by Title VI

      b. Searches and seizures discriminately applied based on sex constitutes a form of Discrimination Prohibited by Title VI

102. That the defendant police officers named herein, unlawfully arrested and imprisoned Plaintiff Rattray without probable cause to believe that Mr. Rattray had engaged in any criminal, unlawful, or

unpermitted activity at the time of the Defendants forceful and unlawful entry into Plaintiff's residence. Furthermore, Cadavid refused Plaintiff's request to leave the home while Cadavid and Trigueno physically blocked Plaintiff's access to exit the home.

103. That Plaintiff was subjected to an unlawful search of his home without consent and was further assaulted and subjected to humiliation and personal degradation, and abuse, during the course of the Defendants' unlawful actions.

104. Mr. Rattray suffered emotional distress, trauma, embarrassment, ridicule, scorn, and depravation of his civil rights caused by the Defendant's police officers.


105. That the invasion into the plaintiff's home without a warrant, and without Plaintiff's consent, constituted a malicious, wanton, and reckless act and degradation of the plaintiff's liberty and due process of law, without legal justification or cause.

106. Defendants' unlawful actions were done willfully and knowingly with the specific intent to deprive Plaintiff of his constitutional rights.

107. The Defendants unlawful actions were done willfully, knowingly and with the specific intent to deprive Plaintiff of his constitutional rights under the Fourth and Fourteenth Amendments to the Constitution of the United States and contrary to their training ant to the policies and procedures of the NYPD as defined in Appendix 2 [TAC_Appendix_2_N-NYPD Patrol_Guide-Investigative_Encounters-2016]

108. That the acts, omissions, and practices alleged herein constitute a pattern or practice of conduct that violates the rights, privileges, and immunities of the Plaintiff which are secured or protected by the Constitution of the United States.

109. That the New York City Police Department's conduct amounted to a policy of deliberate indifference to Plaintiff's constitutional rights to be free from an unlawful search and seizure inside Plaintiff's residence without a warrant.

110. As consequence thereof, Plaintiff has been greatly injured.

111. That the defendant failure to properly utilize their training the named Defendants involved in this incident herein, constituted a practice of acquiescence, and a tolerance of an unconstitutional detention, and seizure, which allowed Cadavid to continue to violate Plaintiffs' constitutional rights.

112. By reason of the foregoing, the individual defendants individually, failed, and refused to use such care in the performance of their duties as a reasonably prudent police officer would have used under similar circumstances, thus resulting in significant emotional injuries to the plaintiff including his loss of liberty and ongoing emotional distress with secondary detrimental effects to his livelihood.

## AS AND FOR A <u>SECOND</u> CAUSE OF ACTION AGAINST DEFENDANT JOSE CADAVID UNDER 42 U.S.C SECTION 1983 AND PER NEW YORK STATE LAW FOR FALSE ARREST AND FALSE <u>IMPRISONMENT</u>

113. That Plaintiff repeats, reiterates, and realleges each and every allegation contained in Paragraphs "1 through "112", with the same force and effect as though more fully set forth at length herein.

114. That by reason of the foregoing, the Plaintiff was intentionally confined for over 63-minutes without privilege or probable cause to believe that Plaintiff was engaged in unlawful activity.

115. That Plaintiff was aware of and did not consent to his confinement and asked Defendant Police Officer Jose Cadavid if Plaintiff could leave the apartment and that Cadavid refused to allow Plaintiff Mr. Rattray to leave the apartment.

116. Mr. Rattray was thereby falsely arrested and detained and imprisoned by Defendant police officer Jose Cadavid.

117. As a direct and proximate result of the above described unlawful and malicious acts of the defendant police officers, all committed under color of their authority as police officers while acting in that capacity, Plaintiff sustained injuries and suffered emotional damages all of which resulted in the violation of plaintiff's rights under the laws and Constitution of the United States, in particular the Fourth and Fourteenth Amendments thereof.

118. The common law tort of false arrest is a species of false imprisonment, and action derived from the ancient common-law action of trespass [that] protects the personal interest of freedom from restraint of

movement." **Singer v. Fulton County Sheriff**, 63 F. 3d 110, (2d Cir. 1995) (quoting **Broughton v. State of New York**, 37 N.Y. 2d at 93, 335 N.E 2d at 314.

119. Under New York Law, there are four elements of a false imprisonment claim: (1) the defendant intended to confine the plaintiff, (2), the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged." **Id**. The **Singer Court** also cited **Hygh v. Jacobs**, 961 F 2d 359, at 366 ("the elements of a claim of false arrest under section 1983 are substantially the same as the elements of a false arrest claim under New York Law." (5) That Plaintiff asked Defendant NYPD Police Officer Jose R Cadavid if Plaintiff could leave the apartment (6) Officer Cadavid refused Plaintiff's request to leave the apartment.

120. Plaintiff's claim under section 1983 for false arrest recognizes the same state elements, but also rests on the right of the individual to be free from unreasonable seizures, including arrest without probable cause.

121. Mr. Rattray was intentionally and unlawfully confined by the Defendants, police officers in that Plaintiff was sufficiently and significantly deprived of his liberty, and was not free to move about his home or to exit, his liberty was severely restricted by the defendant officer.

122. Plaintiff was conscious of defendant's illegal restraint and use of force and was well aware of the facts that Plaintiff was being tormented by Officer Jose Cadavid and Trigueno without probable cause, and that the defendant officers intended to confine the Plaintiff during defendant's unwarranted illegal actions, all without legal justification, probable cause, or privilege.

123. The officers lacked knowledge or reasonable trustworthy information sufficient to warrant a person of reasonable caution in the belief that Plaintiff had been engaged in an unlawful offense thus justifying the Plaintiff's detention.

124. Mr. Rattray, a male of African American decent, was humiliated, assaulted and battered, by the Defendants.

125. As a direct and proximate cause of Defendants unlawful actions, Plaintiff was caused to have suffered harm and sever emotional stress, and loss of liberty.

    a. Plaintiff suffered emotional trauma as a direct result of treatment by armed NYPD officer Jose Cadavid during a physical encounter during an unwarranted presumptively unreasonable search which exposed Plaintiff to substantial risk of harm. - Plaintiff's interest in having his right not violated or diminished by at the hands of NYPD officer Jose Cadavid who worked against Plaintiff's privacy, custodial, and safety interests based solely on Plaintiff's membership in protected classes, namely Plaintiff's race and gender in conflict with the protections of Title VI of the Civil Rights Act of 1964, 42 U.S.C.

126. As direct and proximate result of the defendant officers' conduct, Plaintiffs was greatly humiliated, embarrassed, and injured, and have been caused to suffer great suffering and mental anguish.

**AS AND FOR A <u>THIRD</u> CAUSE OF ACTION AGAINST DEFENDANT ALYSSA TRIGUENO UNDER 42 U.S.C SECTION 1983 FOR FAILURE TO INTERVENE TO PROTECT PLAINTIFF <u>RATTRAY AGAINST THE VIOLATION OF HIS CIVIL RIGHTS</u>**

127. That Plaintiff repeats, reiterates and realleges each and every allegation contained in Paragraphs numbered "1 through 126", with the same force and effect as though more fully set forth at length herein.

128. That Defendant police officer Alyssa Trigueno, upon information and belief was the officer who supervised the Defendant officer Jose Cadavid who entered plaintiff's residence without a valid search warrant and without consent of the plaintiff.

129. That the officer Trigueno failed to intervene to prevent the constitutional violations or to remedy the wrongful action of Defendant police officer Jose Cadavid.

130. That the Defendant Trigueno was grossly negligent in her supervision of officer Jose Cadavid.

131. That officer Trigueno had an opportunity to prevent the abuse suffered by Mr. Rattray and failed to do so.

132. That the officer Alyssa Trigueno was deliberately indifferent to the Plaintiff's constitutional rights where she witnessed actions by Cadavid that her training and experience would have informed her was an unlawful violation of Plaintiff's rights under the constitution of the United States.

133. That the Defendant officer Alyssa Trigueno was operating under the direction and control of the supervising officer, Jose Cadavid and completed the report in a manner that was most favorable to Cadavid and which harmed Plaintiff's privacy interest.

134. That as a direct and proximate cause of Defendant Trigueno failure to intervene in preventing officer Jose Cadavid from forcefully entering Plaintiff's home without a warrant, Mr. Rattray was caused to have suffered harm and severe emotional stress, and loss of liberty.


**NYPD Officers Jose Cadavid** and **Alyssa Trigueno** are therefore liable for Plaintiff's physical, emotional, and financial injuries and distress under the common law as well as for injury to Plaintiff's rights interest.

**WHEREFORE**, Plaintiff demands a trial to seek judgment and relief against Defendants jointly and severally as follows:

**A**. Awarding Plaintiff compensatory damages in an amount that is fair and equitable to be fixed at trial.

**B**. Awarding punitive damages to Plaintiff in an amount that would punish Defendants for the willful, wanton, reckless, and malicious misconduct alleged in this Complaint that would effectively deter Defendants from continuing these practices and policies that have disparate impact on Plaintiff specifically and on black males generally, including civil rights violations and other unlawful behavior in a monetary amounts to be determined at trial.

**C**.  An award to Plaintiff of the costs and disbursements herein including Plaintiff's compensated pro se time in pursuing this complaint.

**D**. An award of reasonable attorney fees under 42 U.S.C. Section 1988 in addition to Plaintiff's actual exertion in defending his rights.

**E**. Granting such other and further relief as this Court may deem just and proper.

Dated; July 27, 2020
          New York, New York

_____
Wentworth Rattray, Plaintiff
42 West 120th Street, #3C
New York, New York 10027
917-353-9675