UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
In re:                             :
                                     Docket #17cv8560
WENTWORTH RATTRAY,                 : 17-cv-08560-PGG-KHP

               Plaintiff,          :

  - against -                      :

CADAVID, et al.,                   :
                                     New York, New York
                                   : September 28, 2021
               Defendants.
----------------------------------- : TELEPHONE CONFERENCE
```

PROCEEDINGS BEFORE
THE HONORABLE JUDGE KATHARINE H. PARKER,
UNITED STATES MAGISTRATE JUDGE


APPEARANCES:

For Plaintiff:          WENTWORTH RATTRAY, Pro Se
                        42 West 120th Street, #3C
                        New York, New York 10027

For Defendants:         NEW YORK CITY LAW DEPARTMENT
                        BY:  ANDREY UDALOV, ESQ.
                             ALAN SCHEINER, ESQ.
                        100 Church Street
                        New York, New York 10007




Transcription Service:  Carole Ludwig, *Transcription Services*
                        155 East Fourth Street #3C
                        New York, New York 10009
                        Phone:  (212) 420-0771
                        Email:  Transcription420@aol.com


Proceedings conducted telephonically and recorded by
electronic sound recording;
Transcript produced by transcription service.

<u>**INDEX**</u>

<u>**E X A M I N A T I O N S**</u>

| <u>**Witness**</u> | <u>**Direct**</u> | <u>**Cross**</u> | <u>**Re-Direct**</u> | <u>**Re-Cross**</u> |
|---|---|---|---|---|
| None | | | | |

<u>**E X H I B I T S**</u>

| <u>**Exhibit Number**</u> | <u>**Description**</u> | <u>**ID**</u> | <u>**In**</u> | <u>**Voir Dire**</u> |
|---|---|---|---|---|
| None | | | | |

```
 1                           PROCEEDINGS                    3

 2              THE CLERK:  Calling case 17cv8560, Rattray v.

 3   Cadavid.  The Honorable Katharine H. Parker, presiding.

 4              Beginning with the plaintiff, can you please state

 5   your name for the record?

 6              MR. WENTWORTH RATTRAY (THE PLAINTIFF):  I am

 7   Wentworth Rattray, pro se plaintiff in this matter.

 8              THE HONORABLE KATHARINE H. PARKER (THE COURT):

 9   Good afternoon.

10              THE CLERK:  And counsel for the defendant, please

11   make your appearance for the record.

12              MR. ANDREY UDALOV:  Your Honor, Andrey Udalov

13   for the defendants and my colleague, Alan Scheiner, as

14   well.

15              THE COURT:  Okay.

16              MR. ALAN SCHEINER:  Good afternoon, Your

17   Honor.

18              THE COURT:  Good afternoon.  A few

19   preliminaries. I'd ask that you keep your phones on

20   mute unless you are speaking to eliminate background

21   noise.  The Court is making a recording of this

22   conference.  If you'd like a transcript, you may order

23   one.  My deputy will put something up on the docket

24   after this conference about how you can order the

25   transcript. The Court prohibits others from recording
```

and rebroadcasting Court conferences.  Violations of

this rule may result in sanctions. And I want to

remind everyone that this is a public line and that

members of the press and public may listen on a listen

only basis.

Okay, this is a discovery conference and there

are a couple of issues.  First, Mr. Rattray, you have

requested permission to further depose Officer Cadavid

regarding a particular topic, specifically a history

with domestic disputes in his family. And there's also

an issue with who to, who can act as a court reporter

with respect to the deposition of Officer Trigueno.

And, finally, Mr. Cadavid -- I'm sorry, Mr. Rattray,

you've also asked to amend the complaint and rejoin

the City to this case.

Let's first talk about the deposition of

defendant Cadavid. The defendant has moved for a

protective order to preclude further questioning of

Officer Cadavid regarding his personal history of

family domestic situations and I did want to hear a

little bit from the parties on this.  Let me hear from

defendants first.

MR. UDALOV:  Your Honor, with respect to that

particular issue, we did file a motion for a

2  protective order and we believe that the inquiry was

3  entirely irrelevant for purposes of plaintiff's claim,

4  especially regarding the situation that was inquired

5  into.  That particular situation did not occur at the

6  time of the incident, that situation, unfortunately,

7  occurred during this year, earlier in this year, I

8  believe in February.  It does not go to any merits of

9  any of plaintiff's claims, especially considering that

10  the claims at issue are, I believe in this case they

11  require an objective understanding and not a

12  subjective. So plaintiff, so the fact that plaintiff's

13  trying to inquire through this line of questioning

14  into subjective motives of Officer Cadavid on the day

15  in question are entirely irrelevant for purposes of

16  his claims at this issue.

17          THE COURT:  Thank you.  Mr. Rattray, I'll give

18  you two minutes.

19          THE PLAINTIFF:  Yes, Your Honor. Officer

20  Cadavid had made, had answered a question posed about

21  his personal experience, mother, father, brother,

22  sister, with domestic violence, and Officer Cadavid

23  stated he had no such knowledge or no such experience.

24  Documentation, documents provided by counsel,

25  defendant's counsel, indicate a history with domestic

```
 1                         PROCEEDINGS                    6

 2   incidents in his police report.  Plaintiff was

 3   attempting to ask Officer Cadavid about that incident

 4   or that history to understand how that impacted his

 5   personal ability to be objective in that situation.

 6   Officer Cadavid said no, which contradicted the

 7   evidence that plaintiff was looking at.  Plaintiff

 8   also did a search and understood that Officer Cadavid

 9   had made public statements about ongoing domestic

10   incidents with his sister, and so plaintiff was

11   attempting to ask Officer Cadavid about those publicly

12   available statements that he made regarding an

13   incident earlier this year in High Point, North

14   Carolina, and simply asking him about his own

15   statements. And that's where the train left the rails,

16   and counsel objected and stopped the inquiry.

17             THE COURT:  So I have --

18             MR. UDALOV:  Your Honor, if I --

19             THE COURT:  I've heard enough. I've reviewed

20   the information submitted and under the Federal Rules

21   of Civil Procedure, Rule 26(B)(1), parties are

22   entitled to discovery on matters that are relevant to

23   the claims and defense and proportional to the needs

24   of the case. And Rule 26(C)(1) also provides for the

25   ability for a party to apply for a protective order,
```

PROCEEDINGS                           7

and a Court may, for good cause, issue a protective

order to protect the party or person from annoyance,

embarrassment, oppression, undue burden and expense.

And when determining whether such a protective order

is appropriate, the Court considers the evidence of

annoyance, embarrassment, oppression or undue burden

and expense, how central or tangential the evidence

sought is in relation to the central issues in the

litigation, the importance of the issues in the

litigation to the public, the parties' stakes in the

outcome of a litigation, whether the evidence sought

is available from other sources, and whether the

discovery of evidence can be conditioned on terms that

would alleviate the hardship in producing it.

          Here, in considering all of these factors, I

find that the protective order should be granted and

no further questioning should be permitted of Officer

Cadavid on this topic.  It is a personal matter and

there is no legitimate basis to inquire into it. It's

not relevant to the claims and defenses and, further,

I think it's a completely inappropriate line of

questioning. So for that reason, the motion for a

protective order is granted, and for the same reason,

plaintiff's request to complete the deposition of

```
 1                          PROCEEDINGS                8
 2   Officer Cadavid is denied.
 3           THE PLAINTIFF:  Your Honor, Your Honor, one
 4   point of clarification, if I may?
 5           THE COURT:  Yes.
 6           THE PLAINTIFF:  Just to clarify, plaintiff was
 7   not asking Officer Cadavid for plaintiff's own
 8   pleasure.  Plaintiff was simply making a statement or
 9   requesting of Officer Cadavid that he had made a
10   statement that was demonstrably false.
11           THE COURT:  It's not, it's not relevant to
12   this matter and I've heard enough. I'm not hearing any
13   more.  This is completely irrelevant and it is,
14   frankly, cruel to be asking Officer Cadavid about
15   this. And so I'm not going to hear any more on this.
16           The second, the second issue has to do with
17   deposing officer Trigueno via Zoom or video, but with
18   an out of state court reporter. Rule 28 in the Rules
19   of Civil Procedure states that, "If there is, within
20   the United States," which is where we are, "a deposition
21   may be taken before an officer authorized to administer
22   oaths either by federal law or by the law in the place of
23   examination, or a person appointed by the Court where the
24   action is pending to administer oaths and take testimony."
25   Rule, the first part that I read is what applies here so,
```

PROCEEDINGS                          9

Mr. Rattray, is the court reporter that your proposing to
use authorized to administer oaths by federal law or New
York law?

THE PLAINTIFF:  Your Honor, I believe that
court reporter to be a federally, a federal, a, I
won't say federal, but a member of the Court Reporters
Association and capable of conducting a deposition
across the nation, except for states that have
specific requirements for licensures within those
specific states. I do not have yet in my possession
the documents to support that.

THE COURT:  Well, the rule 28(A)(1)(a) and if,
in fact, the court reporter satisfies the requirements
of Rule 28(A)(1)(a) then it is appropriate, otherwise
the court reporter is not appropriate. The person to
be the reporter has to satisfy the requirements of
that rule.  So if you don't know, you've got to find
out or get somebody else who does satisfy that rule,
Mr. Rattray.

THE PLAINTIFF:  Understood, Your Honor.
Plaintiff is attempting to retrieve the actual
documents. I've been assured verbally by the agency
that that reporter is certified, however, I don't have
the documents bearing proof to be able to provide to

1                              PROCEEDINGS                    10

2  the Court as yet.

3          THE COURT:  You don't need to provide it to

4  the Court, you are going to have to provide it to the

5  defendants. I take it that defendants are questioning

6  the certification, is that correct?

7          MR. UDALOV:  Yes, Your Honor, and it was based

8  on the initial, there was too, the court reporter was

9  apparently in Canada and that's when the issues that

10  arose that we addressed, I believe in the letter that

11  we submitted on September 13th.

12          THE COURT:  Well, if somebody, in this day and

13  age of Covid and remote depositions, I don't know if

14  the person, if the person happens to be in Canada but

15  is otherwise authorized --

16          MR. UDALOV:  Your Honor, that particular

17  stenographer, Your Honor, she was not, not in New York

18  and not anywhere in the United States. That was

19  according to what the stenographer told us during, during,

20  I believe this was on August 20, 2021.

21          THE PLAINTIFF:  To, Your Honor, if I may, to

22  clarify the situation, the, there were two

23  depositions, one of Officer Trigueno and one of

24  Officer Cadavid. The first time we tried to, we tried

25  to depose Officer Cadavid, the court reporter was not

 1

 2  challenged at the time.  Subsequent to that,

 3  subsequent to that deposition, we attempted to depose

 4  Officer Trigueno.  That court reporter was an out of

 5  state person and, in fact, not in the United States and

 6  was not licensed in the United States.  We ended that

 7  attempt and rescheduled with a different court reporter on

 8  a different date and then we were able to get a certified

 9  court reporter.  So the, and that's where the issue came

10  up, the questions came up around the first deposition.

11  Those questions were not raised at the time, but because

12  of the issue with the second deposition, that cased

13  defendants to then raise questions about, well, who was

14  the first court reporter. And so we're trying to get that

15  information now.

16          MR. UDALOV:  Yes, Your Honor, and with respect

17  to the first, during the deposition of Officer

18  Cadavid, we believe that the stenographer was licensed

19  in Ohio and not in New York, and we don't have

20  information whether that stenographer was federally,

21  was allowed (indiscernible) under federal law. So we

22  don't have that information yet, we were only able to

23  find that out after we received the transcript of the

24  deposition of Officer Cadavid.

25          THE COURT:  Well the person needs to be

1                          PROCEEDINGS                    12

2  authorized either by federal law or the place of

3  examination.  So that's the rule.  I'm going to assume

4  that you are going to follow it with respect to the

5  remaining depositions and if there's a problem you can

6  bring it to my attention.  But I'm going to consider

7  this resolved and assume, Mr. Rattray, that you will

8  follow that rule in terms of who engage to be the

9  court reporter.

10          THE PLAINTIFF:  Yes, Your Honor.

11          THE COURT:  Now, the last thing is, Mr.

12  Rattray, you've asked to amend the complaint again,

13  but the period for amending pleadings has long passed.

14  And in order to justify filing an amended complaint,

15  you have to demonstrate good cause for amending it

16  now.  Whether good cause exists largely turns on the

17  diligence of the moving party and I am not sure why

18  you think at this point it is appropriate to amend,

19  again, when discovery is basically nearly complete.

20          THE PLAINTIFF:  Your Honor, plaintiff is still

21  receiving documents from defendants and did not have

22  access to these documents during, for most of discovery,

23  during the deposition an additional document popped up

24  that was quite helpful.  Plaintiff is still reviewing

25  the information before him, but plaintiff sees now the

1                             PROCEEDINGS                    13

2   culpability, if you will, at least by plaintiff's

3   belief, the record, the records that defendants have

4   produced have shown that the City of New York knew or

5   should have known that these officers were not

6   performing their duties, that they needed to be

7   trained properly or additionally and, in fact, had on

8   some occasions disciplined them for failing to make

9   memo entries, as we see in this case.  You know,

10  having retaliatory arrests as we allege in this case,

11  or unlawful arrests, but a litany of constitutional

12  violations in their record going back several years.

13  And we also have documents from supervisors or folks

14  who are in a supervisory role stating that their job

15  is not to, you know, supervise or review documents

16  just simply to make sure that boxes are filled in and

17  they attest to that in the record. That information,

18  plaintiff believes, you know, is sufficient to plead

19  municipal liability in this this case.  But, again,

20  those documents were not available.

21          THE COURT:  Okay, I'd like to hear from

22  defendant regarding the good cause standard.

23          MR. UDALOV:  Your Honor, we believe there is

24  no good cause right now to amend the complaint.  The

25  issues in this case revolve around plaintiff's alleged

PROCEEDINGS                    14

false arrest and unlawful entry into his apartment.

What plaintiff is talking about now with respect to

documenting or recording records, that is, that does

not, one, address the issues in this case, and is not

relevant for purposes of whether the officers' actions

were objectively reasonable.

Additionally, we have filed a motion also on

September 24th outlining our position as the plaintiff

has not pled, has not stated any (indiscernible) like

a policy or custom with respect to the issues in this

case. Same thing with, and respect to -- yes, Your

Honor, sorry, I apologize, Your Honor, just looking at

my documents right now.

Additionally, this incident, Your Honor,

revolves around, it last approximately an hour. What

plaintiff was alleging with respect to thinking that

his, the DIR report wasn't sufficiently complete in

this case, and also right now I'm not entirely sure as

to which documents that plaintiff was referring to.

When he's saying that he just received the one, the

one that I believe he's referring to that he received

at the deposition, a recent deposition of Officer

Trigueno was a carbon copy of the DIR report that we

already provided him. And, additionally, based on

1                              PROCEEDINGS                    15

2  plaintiff merely saying that he believes that the DIR

3  report or something was not according to what she

4  thinks that the events should have been recorded as,

5  that does not rise to the level of a constitutional

6  violation in this case.

7           And I believe also, Your Honor, with respect

8  to the disciplinary records, I mean plaintiff had them

9  already as far as I believe he received those

10 disciplinary records in this case, I apologize again,

11 I'm looking at the records of when we sent this, I

12 believe initial disclosures, they were earlier on this

13 year, and I know with respect to the supplemental

14 disclosures, I think he's had them at least since

15 August of this year.  So I think with all the issues

16 that he's raising, now addressing, especially when we

17 are already completing depositions and it's been so

18 close to discovery already concluding, that it's

19 entirely inappropriate. There is no good cause right

20 now to amend the complaint a fourth time.

21          THE COURT:  Okay. I'm just taking a look at

22 the docket here because right now, let me just see

23 here --

24          THE PLAINTIFF:  Your Honor, if I may, just to

25 clarify some things that were not --

```
 1                    PROCEEDINGS                    16
 2          THE COURT:  I'm a little bit unclear about
 3   this.  I already issued a report and recommendation
 4   earlier this year with respect to an amendment, so I'm
 5   not sure how what's being proposed differs from that.
 6   Mr. Scheiner, if you want to provide any
 7   clarification?
 8          THE PLAINTIFF:  This is Mr. Rattray.
 9          MR. SCHEINER:  Well, Your Honor, this is Alan
10   Scheiner.  I mean my, Mr. Udalov might have more
11   background on this, but you are correct that
12   previously you rejected an attempt to sue the City in
13   this case.  And in our view there is nothing, nothing
14   new here, this is just a new attempt to do exactly the
15   same thing. Mr. Rattray's theory is that the City
16   should have I guess fired or disciplined Officer
17   Cadavid sooner or should have intervened in this
18   particular case, as I understand his allegations, as
19   it was going on.  But those allegations relate to this
20   particular person in this particular incident, they
21   don't relate to a policy or practice which he has not
22   demonstrated, and which he doesn't, you know, have
23   allegations so support.
24          So in addition to this being, you know, very
25   late in the day, and also the plaintiff did have
```

discovery of a disciplinary record prior, there were I
think two rounds of discovery with respect to
disciplinary records, but there was the initial one
and then a secondary one, but I don't think there is
anything very new that justifies this late round, this
late attempt to amend because there is no new evidence
of any policy or practice which is what is required.

Also, I want to mention that, of course, a
Monell claim requires an underlying constitutional
violation.  And we believe that there's already
sufficient record for summary judgment on the
underlying constitutional claim and many Courts have
bifurcated discovery and bifurcated claims because the
expense and burden of a Monell claim is, you know,
oftentimes greater than that related to the underlying
claim. And if the underlying claim is invalid, there's
no need to even address Monell issues.

Here we think that the facts which are
undisputed, despite disputes about irrelevance
matters, the basic underlying facts are undisputed.
Mr. Rattray, the mother of Mr. Rattray's daughter
called the police and told the police in person that
she felt that her daughter's life was in danger
because she could not find her she believed her

1                              PROCEEDINGS                    18

2  daughter to be with Mr. Rattray.  The police went to

3  his apartment to question him and try to ascertain

4  whether the daughter was safe.  When they questioned

5  him, he refused to answer their questions and he

6  refused to allow them in the apartment. That is

7  undisputed. So in order to find out if she was in

8  there and safe -

9          THE PLAINTIFF:  I object, Your Honor --

10         MR. SCHEINER:  May I finish, Your Honor,

11 please?

12         THE COURT:  Hang on, Mr. Rattray, I'll let you

13 speak after Mr. Scheiner's done.

14         MR. SCHEINER:  So that much is undisputed,

15 that he did not answer their questions, he did not let

16 them in.  And Officer Cadavid and Officer Trigueno

17 both believe that in order, that this was an exigent

18 circumstance and they had to find out whether the

19 daughter was, in fact, there and whether she was safe.

20 So Officer Cadavid went in and looked around. That's

21 all he did is he looked around.  And Mr. Rattray was

22 never placed in handcuffs, he was never in police

23 custody, and this whole incident, this whole back and

24 forth took no more than an hour, if that. I think

25 there is some dispute about how long, but the point

is, is that Mr. Rattray had an interaction with police
at his apartment.  Because Mr. Rattray objects to
this, we have spent many, many hours in discovery,
including many hours in which Mr. Rattray has asked
irrelevant questions and oppressive questions and, as
Your Honor observed, cruel questions, attempting to,
in my opinion, gain some vindictive, you know,
vindictive pleasure out of torturing these officers
who went to his apartment in order to protect his own
daughter. And we think that these facts are clear
enough that these officers are entitled to dismiss all
of the case, you know, at least, you know, under
grounds, under constitutional grounds as well as
qualified immunity, if not, you know, the basic
underlying constitutional grounds.  And, therefore,
that, you know, there is no need to go any further
with the matter.

So I think that although I think the amendment
is ill timed and there is no actual, and it would be
futile based on the plaintiff's own version of his
case, that Your Honor need not even reach that
question now.  Because if Your Honor were to hear a
summary judgment motion now, I think that you would
determine that there is no underlying constitutional

```
 1                          PROCEEDINGS                    20
 2   violation and, therefore, there is no need to go any
 3   further.
 4              THE COURT:  Okay, thank you.  Mr. Rattray,
 5   I'll let you respond.
 6              THE PLAINTIFF:  Your Honor, plaintiff
 7   strenuously objects to any motion for summary judgment
 8   or dismissal at this stage.  Given the recent Caniglia
 9   v. Strom ruling on police, on warrantless searches,
10   plaintiff feels strongly that there is sufficient
11   evidence here.  One is of particular note, plaintiff
12   objects to defense counsel's allegation that the
13   mother told Officer Cadavid that that is an undisputed
14   fact, that is entirely disputed.  Plaintiff has only
15   in deposition heard Officer Cadavid speak of mother
16   said, mother told him that child's life was in danger.
17   That is, when we were in the deposition was the first
18   time that came up.
19              Officer Cadavid went on to embellish that the
20   mother told him that I used drugs, that I have drug
21   dealers over the house. In fact, the description that
22   Officer Cadavid gives the plaintiff more fits the
23   person who was his sister's partner than it fits
24   plaintiff. And, Your Honor, I know in embarked on
25   bringing that particular incident up, but that is an
```

PROCEEDINGS                    21

2  observation that plaintiff has only recently through

3  reading through the deposition observed and feel is

4  relevant to this matter. This entire case will rest on

5  Officer Cadavid's credibility and when he makes

6  statements that are not in line with the evidence, the

7  documents that he produced over, or that his partner

8  produced over time, I feel his credibility is at stake

9  here.

10      Plaintiffs would also ask the Court leave to

11  depose the mother in the case so that we could get her

12  statement of what she told Officer Cadavid. Officer

13  Cadavid's partner has made statements that are

14  inconsistent with Officer Cadavid's in that she did

15  not hear the mother say that the child was in danger.

16  Officer Cadavid has testified under oath that he, he,

17  the mother told him that, and his partner, that the

18  child's life was in danger. So I think those issues

19  need to be resolved.

20      And in the, you know, plaintiff's explanation

21  of the incident, as outlined in the third amended

22  complaint, appendix L, you know, the interview with

23  the Internal Affairs Bureau clearly shows that the

24  City of New York officer held in his understanding of

25  when officers are allowed to do searches in his mind,

1

2  that, that officers were allowed to search,

3  regardless, as long as there is someone who calls 911.

4  And he explains that to plaintiff during his

5  investigation at plaintiff's home. That is in, again,

6  Appendix L or Appendix 2, Item L of the third amended

7  complaint, Your Honor.  And plaintiff believes that

8  that is sufficient to justify and to demonstrate

9  municipal liability, that there is a pattern and

10  practice of NYPD of how they handle domestic incidents

11  and how they investigate and discipline their

12  officers.

13          THE COURT:  So I think that what I haven't

14  heard is good cause for amending the complaint, yet

15  again, to add a claim that I already found was not

16  supported. It doesn't sound like there is any new

17  evidence that would support this proposed amendment

18  and I'm not going to permit another amendment to the

19  pleading.

20          There's the remaining deposition that is going

21  to occur, I guess of Officer Trigueno, what is, when

22  can that be taken?

23          MR. SCHEINER:  Your Honor, this is Alan

24  Scheiner, we already actually had the deposition of

25  Officer Trigueno, if I could clarify something about

the issue of the court reporter's credentials. The

court reporter for Officer Trigueno who appeared

actually had, was credentialed in New York, so they

were able to conduct the deposition in New York.  So

there is no dispute about that.  What we found when we

got a transcript of the deposition of Officer Cadavid,

was that that court reporter was licensed in Ohio. And

when we learned that, we raised an objection in our

submissions to the Court to that transcript and the

further use of it because we learned, as soon as we

learned that they were not admitted in, or rather

licensed in New York.  It simply did not come up at

the deposition and it, you know, it's never been an

issue in the past as to where, court reporters

generally know that they should be licensed in the

place where the deposition is being taken, so that is

not something that is not normally inquired into at

the time of the deposition, but as soon as we learned

of it we raised it.

        But putting that aside for the moment, in our

view there are no further depositions to be taken

because we think the matter is ripe for summary

judgment. Now the plaintiff has just raised his

request to depose the mother who spoke to the police,

PROCEEDINGS                    24

and, you know, she is a witness to what she told the

police. So, you know, I can't object and say she's not

a relevant witness, I wasn't aware, however, that he

wanted to depose her and I don't know if she's on his

disclosures, initial disclosures as a witness that he

intends to call at trial. So, you know, we would

object on that basis if she is not.

THE COURT:  Mr. Rattray, did you list your

former wife or your child's mother as a witness?  Mr.

Rattray, I can't hear you, you may be on mute.

THE PLAINTIFF:  Yes, Your Honor, apologize. I

believe I listed everyone that I was aware of having,

having there, but I may have presumed that she was, of

course, the complainant and, therefore, would be a

witness and accessible. But plaintiff would need to

look up that document, Your Honor.

THE COURT:  So you don't know?  I mean you

should have known that she's a witness because that's

the person who made the complaint, so I think you had

plenty of time to depose her if you wanted to.

Nevertheless, in light of your pro se status, I'll

permit you thirty days from today to complete the

deposition of the child's mother. And, again, the

court reporter, whoever you get to do the transcript,

1

2    has to, you know, has to be certified consistent with

3    the Federal Rule 28.

4            THE PLAINTIFF:  Understood, Your Honor.

5            THE COURT:  I am only extending discovery for

6    this one purpose, this one deposition, otherwise

7    discovery is complete.

8            MR. SCHEINER:  Your Honor, if I may ask,

9    obviously I do not represent that witness, I have no

10   intention to, but in our view Mr. Rattray has

11   unreasonably extended the length of depositions, asked

12   invasive and oppressive and irrelevant questions, and

13   we'd like to ask that a judicial officer be present

14   for that deposition for the protection of the witness

15   from harassment and general regulation of the

16   proceedings and limiting them to a proper and

17   questioning and relevant matter.  They have an ongoing

18   dispute, Your Honor.

19           THE COURT:  What I am going to do is I am

20   going to put a time limit on the deposition. The time

21   limit will be one hour.

22           THE PLAINTIFF:  Thank you, Your Honor.

23           THE COURT:  And the deposition questions must

24   focus on the report to the police and nothing else.

25   That's the only thing that you're permitted to

1

2  question the witness about. It should take less than

3  an hour actually.  Do you understand, Mr. Rattray?

4         THE PLAINTIFF:  I understand, Your Honor.  I,

5  I will object to defendant counsel's characterization

6  of my questions as cruel.  Plaintiff never asked the

7  officer about his deceased relatives, plaintiff simply

8  asked him if he had ever had any experience with that,

9  because that is an item that is in the, the

10  supplemental disclosures that they had recently

11  provided to plaintiffs.  And he made a, he

12  contradicted that document and plaintiff went to pull

13  up a recording where he, himself, had said something

14  to the contrary.

15         THE COURT:  I don't need to hear anything

16  else. I don't need to hear anything else on this. I'm

17  going to grant your request to take a maximum of one

18  hour of a deposition of the child's mother and it

19  should, your questions must focus on what was reported

20  to the police. That is the only thing that is

21  relevant, what was reported to the police, do you

22  understand, Mr. Rattray?

23         THE PLAINTIFF:  Your Honor, I would like to

24  clarify, reported to the police, including the 911

25  call to the dispatch and what was said to the Officers

1                          PROCEEDINGS                        27

2  Cadavid, Trigueno and Koch after they returned

3  downstairs --

4              THE COURT:  Yes.

5              THE PLAINTIFF:  Before they came upstairs and

6  before they arrived at the scene, is that correct?

7              THE COURT:  Yes, that's what you may ask her

8  about.

9              THE PLAINTIFF:  Thank you.

10             THE COURT:  Okay.  So this means that all

11 discovery will be completed by the end of October, how

12 long will defendants need to file a motion for summary

13 judgment after that?

14             MR. SCHEINER:  Thirty days, Your Honor.

15             THE COURT:  Okay, a motion for summary

16 judgment will be due on November 30th.

17             MR. SCHEINER:  Well because of Thanksgiving,

18 Your Honor, if I could ask for an additional week

19 after that?

20             THE COURT:  So you want to do it December 6th?

21             MR. SCHEINER:  Yes, Your Honor.

22             THE COURT:  All right.  And in light of your

23 pro se status, Mr. Rattray, I will give you, and also

24 the holidays, I'm going to give you until January 28th

25 to respond, to file an opposition to the motion for

1                          PROCEEDINGS                    28

2  summary judgment, and the reply will be due February

3  16th.  I'll put this schedule in an order.

4          Okay, anything further from plaintiff?

5          THE PLAINTIFF:  Nothing further, Your Honor.

6  There were several statements made during the

7  deposition of Officer Cadavid that would have required

8  an additional written response from his supervisors,

9  specifically what he told his supervisor, and the

10 investigating NYPD officer regarding what he wrote,

11 which conflicts again with what the discussion he and

12 I had in Appendix L.  If Your Honor would allow those

13 written, written depositions or written requests for

14 information, plaintiff would appreciate that.

15         THE COURT:  No, there is no more discovery.

16 You've had plenty of time to conduct discovery.

17         All right, anything further from defendants?

18         THE PLAINTIFF:  No, just outlining, Your Honor,

19 that plaintiff, again, did not have access to these

20 documents until recently and didn't have access to

21 statements from the defendants until, in deposition,

22 until recently.

23         MR. SCHEINER:  Your Honor, if it's not clear,

24 that was the plaintiff who was just speaking.  There

25 is nothing further from defendants, Your Honor.

```
 1                        PROCEEDINGS                    29

 2          THE COURT:  Okay, great.  Thank you, everyone,

 3  I'll issue an order today with the schedule.  Have a

 4  good day.

 5                  (Whereupon, the matter is adjourned.)

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

30

C E R T I F I C A T E

    I, Carole Ludwig, certify that the foregoing transcript of proceedings in the case of Wentworth Rattray v. Cadavid, et al., Docket #17cv8560, was prepared using digital transcription software and is a true and accurate record of the proceedings.


Signature:    *Carole Ludwig*

             Carole Ludwig

Date:    October 4, 2021