17-CV-8560 (PGG) (KHP)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

WENTWORTH RATTRAY,

Plaintiff,

-against-

POLICE OFFICER JOSE CADAVID  and POLICE
OFFICER ALYSSA TRIGUENO,

Defendants.

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT PURSUANT TO FED. R. CIV. P. 56**

*HON. SYLVIA O. HINDS-RADIX*
*Corporation Counsel of the City of New York*
*Attorney for Defendants PO Cadavid and*
*PO Trigueno*
*100 Church Street*
*New York, N.Y.  10007*

*Of Counsel:  Andrey Udalov*
*Tel:  (212) 356-0822*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................. iii

PRELIMINARY STATEMENT ............................................................................1

STATEMENT OF FACTS....................................................................................2

STANDARD OF REVIEW...................................................................................5

ARGUMENT

    POINT I

        OFFICER CADAVID'S SEARCH WAS
        SUPPORTED BY EXIGENT CIRCUMSTANCES..................................6

        A.  Exigent circumstances called for PO Cadavid's
            entry into plaintiff's apartment.............................................................6

        B.  Defendants are entitled to qualified immunity for
            the entry into the apartment...............................................................11

    POINT II

        PLAINTIFF'S UNLAWFUL SEARCH CLAIM
        SHOULD BE DISMISSED AGAINST PO
        TRIGUENO ............................................................................................14

    POINT III

        PLAINTIFF'S FALSE ARREST CLAIM SHOULD
        BE DISMISSED BECAUSE PLAINTIFF WAS
        NOT ARRESTED .....................................................................................15

        A.  Plaintiff was not arrested...................................................................17

        B.  Probable cause existed for plaintiff's arrest.......................................17

        C.  Defendants are entitled to qualified immunity for
            any arrest............................................................................................19

**Page**

POINT IV

PLAINTIFF'S     FAILURE     TO     INTERVENE
CLAIMS AGAINST PO TRIGUENO SHOULD BE
DISMISSED.................................................................................20

A. Plaintiff's failure to intervene claim for the
alleged unlawful search should be dismissed.....................................21

B. Plaintiff's failure to intervene claim for the
alleged false arrest should be dismissed. ...........................................23

CONCLUSION.................................................................................24

## TABLE OF AUTHORITIES

**<u>Cases</u>**                                                                                                                    **<u>Pages</u>**

*Allen v. Coughlin*,
   64 F.3d 77 (2d Cir. 1995) .................................................................................5

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) ........................................................................................5

*Antic v. City of New York*,
   273 F. Supp. 3d 445 (July 27, 2017) .............................................................19

*Arroyo v. City of New York*,
   683 Fed. App'x. 73 (2d Cir. 2017)................................................................20

*Baksh v. City of New York*,
   15-CV-7065 (NGG) (ST), 2018 U.S. Dist. LEXIS 60167
   (E.D.N.Y. Mar. 31, 2018)..............................................................................21

*Bartlett v. City of New York*,
   03-CV-1961 (CPS), 2005 U.S. Dist. LEXIS 4829 (E.D.N.Y. Feb. 18, 2005) .......................23

*Bernard v. United States*,
   25 F.3d 98 (2d Cir. 1994) ...............................................................................16

*Bey v. La Casse*,
   20-CV-9171 (LLS), 2021 U.S. Dist. LEXIS 55651
   (S.D.N.Y. Mar. 22, 2021)................................................................................7

*Bickerstaff v. Vassar College*,
   196 F.3d 435 (2d Cir. 1999) ...........................................................................5

*Bissinger v. City of New York*,
   06-CV-2325 (WHP), 06-CV-2326 (WHP), 2007 U.S. Dist.
   LEXIS 70155 (S.D.N.Y. Sept. 24, 2007) ......................................................17

*Brown v. City of New York*,
   13-CV-1018 (KBF), 2016 U.S. Dist. LEXIS 53365
   (S.D.N.Y. Apr. 20, 2016) ...............................................................................12

*Cabrera v. City of New York*,
   16-CV-1098 (GBD), 2017 U.S. Dist. LEXIS 199664
   (S.D.N.Y. Dec. 4, 2017) ............................................................................21, 22

*Curley v. Village Suffern*,
   268 F.3d 65 (2d Cir. 2001) ...............................................................................7

**<u>Cases</u>**                                                                                          **<u>Pages</u>**

*Devenpeck v. Alford*,
    543 U.S. 146 (2004) ...........................................................................................17

*Doninger v. Niehoff*,
    642 F.3d 334 (2d Cir. 2011) ...........................................................................11

*Dowling v. City of New York*,
    11-CV-4954 (NGG) (RML), 2013 U.S. Dist. LEXIS 142108
    (E.D.N.Y. Sept. 30, 2013) ...............................................................................19

*Duncan v. City of New York*,
    11-CV-3901 (ENV) (JO), 12-CV-1565 (ENV) (JO),
    2017 U.S. Dist. LEXIS 114607 (E.D.N.Y. July 17, 2017)..................................14

*Esgro v. Serkiz*,
    06-CV-0365, 2007 U.S. Dist. LEXIS 5026 (N.D.N.Y. Jan. 23, 2007) ...................19

*Excelled Sheepskin & Leather Coat Corp. v. Or. Brewing Co.*,
    897 F.3d 413 (2d Cir. 2018) .............................................................................5

*Grice v. McVeigh*,
    873 F.3d 162 (2d Cir. 2017) ...........................................................................12

*Henry v. Dinelle*,
    10-CV-0456 (GTS) (DEP), 2011 U.S. Dist. LEXIS 136583
    (N.D.N.Y. Nov. 29, 2011) ...........................................................................20-21

*Higginbotham v. Sylvester*,
    14-CV-8549 (PKC), 2016 U.S. Dist. LEXIS 151997
    (S.D.N.Y. Nov. 2, 2016),
    *aff'd*, 741 Fed. App'x. 28 (2d Cir. 2018)............................................................5

*Hill v. Quigley*,
    12-CV-8691 (AKH), 2017 U.S. Dist. LEXIS 221732
    (S.D.N.Y. Jan. 25, 2017) .............................................................................22-23

*Hogan v. Buttofocco*,
    07-CV-0731 (NAM) (DRH), 2009 U.S. Dist. LEXIS 89185
    (N.D.N.Y. Sept. 28, 2009) ...............................................................................19

*Hogan v. Caputo*,
    02-CV-1040 (LEK) (RFT), 2004 U.S. Dist. LEXIS 11204
    (N.D.N.Y. June 21, 2004)................................................................................10

**Cases**                                                                                        **Pages**

*Howard v. Town of Dewitt*,
   12-CV-870, 2015 U.S. Dist. LEXIS 64947
   (N.D.N.Y. May 19, 2015) ..................................................................................... 9, 10, 13, 14

*Hunsberger v. Wood*,
   570 F.3d 546 (4th Cir. 2009) ................................................................................... 8, 13, 14

*Hurt v. City of New York*,
   15-CV-7612 (PKC), 2018 U.S. Dist. LEXIS 212531
   (S.D.N.Y. Dec. 18, 2018) ............................................................................................... 2

*Jaegly v. Couch*,
   439 F.3d 149 (2d Cir. 2006) ........................................................................................ 16

*Jeffreys v. Rossi*,
   275 F. Supp. 2d 463 (S.D.N.Y. 2003),
   *aff'd*, 426 F.3d 549 (2d Cir. 2005) ............................................................................... 5

*Johnson v. Bieling*,
   20-CV-1124 (GTS) (ML), 2021 U.S. Dist. LEXIS 2790
   (N.D.N.Y. Jan. 6, 2021) ............................................................................................... 20

*Johnson v. Cty. of Nassau*,
   09-CV-4746 (JS) (MLO), 2010 U.S. Dist. LEXIS 101752
   (S.D.N.Y. Sept. 27, 2010) ............................................................................................ 22

*Kass v. City of New York*,
   864 F.3d 200 (2d Cir. 2017) ........................................................................................ 19

*Keith v. City of New York*,
   11-CV-3577 (KPF), 2014 U.S. Dist. LEXIS 166469
   (S.D.N.Y. Dec. 1, 2014) ........................................................................................... 7, 16

*Kisela v. Hughes*,
   138 S. Ct. 1148 (2018) ................................................................................................. 11

*Krause v. Bennett*,
   887 F.2d 362 (2d Cir. 1989) ........................................................................................ 16

*Lee v. Sandberg*,
   136 F.3d 94 (2d Cir. 1999) ....................................................................................... 7, 16

*Lennon v. Miller*,
   66 F.3d 416 (2d Cir. 1995) .......................................................................................... 23

v

**Cases**                                                                      **Pages**

*Levy v. City of New York*,
    935 F. Supp. 2d 575 (E.D.N.Y. 2013)....................................................................23

*Loria v. Gorman*,
    306 F.3d 1271 (2d Cir. 2002)...........................................................................14

*Lynch v. Ackley*,
    811 F.3d 569 (2d Cir. 2016) ............................................................................11

*Malley v. Briggs*,
    475 U.S. 335 (1986) .......................................................................................12

*Martinez v. Simonetti*,
    202 F.3d 625 (2d Cir. 2000) ............................................................................16

*McIntosh v. City of New York*,
    722 Fed. App'x. 42 (2d Cir. 2018) ...............................................................7, 16

*Miranda v. Ariz.*,
    384 U.S. 436 (1966) .......................................................................................10

*Mullenix v. Luna*,
    577 U. S. 7 (2015) (per curiam)......................................................................12

*Munoz v. City of New York*,
    17-CV-9583 (LAK) (DF), 2021 U.S. Dist. LEXIS 169439
    (S.D.N.Y. Sept. 7, 2021).............................................................................20, 23

*Novo v. City of Danbury*,
    18-CV-907 (VAB), 2020 U.S. Dist. LEXIS 141499
    (D. Conn. Aug. 7, 2020) ................................................................................14

*Pearson v. Callahan*,
    555 U.S. 223 (2009) .......................................................................................11

*Porat v. Lincoln Towers Cmty. Ass'n*,
    04-CV-3199 (LAP), 2005 U.S. Dist. LEXIS 4333
    (S.D.N.Y. Mar. 17, 2005) ...............................................................................17

*Rattray v. Cadavid*,
    17-CV-8560 (PGG) (KHP), 2019 U.S. Dist. LEXIS 155397
    (S.D.N.Y. Sept. 9, 2019).................................................................................17

*Ray v. Twp. of Warren*,
    626 F.3d 170 (3d Cir. 2010) ....................................................................7, 12, 14

**Cases**                                                                                                    **Pages**

*Ringel v. Cty. of Nassau*,
   18-CV-1930 (SJB), 2021 U.S. Dist. LEXIS 182698
   (E.D.N.Y. Sept. 22, 2021) ...................................................................................9

*Rivas-Villegas v. Cortesluna*,
   142 S. Ct. 4 (2021) (per curiam) ......................................................................12

*Sash v. United States*,
   674 F. Supp. 2d 531 (S.D.N.Y. 2009) ..........................................................21-22

*Schreiber v. Moe*,
   596 F.3d 323 (6th Cir. 2010) ...........................................................................10

*Serby v. Town of Hempstead*,
   04-CV-901 (DRH) (MLO), 2006 U.S. Dist. LEXIS 103697
   (E.D.N.Y. Sept. 30, 2006) ................................................................................15

*Singer v. Fulton County Sheriff*,
   63 F.3d 110 (2d Cir. 1995) ...............................................................................15

*United States v. Holland*,
   755 F.2d 253 (2d Cir. 1985) .............................................................................14

*United States v. MacDonald*,
   916 F.2d 766 (2d Cir. 1990) ...............................................................................6

*United States v. Moreno*,
   701 F.3d 64 (2d Cir. 2012) .................................................................................6

*United States v. Zabare*,
   871 F.2d 282 (2d Cir. 1989) .............................................................................10

*Vrazel v. Long Island R.R.*,
   14-CV-6209 (ADS)(ARL), 2017 U.S. Dist. LEXIS 90557
   (E.D.N.Y. June 13, 2017) ...................................................................................2

*Walker v. City of New York*,
   15-CV-500 (NG) (ST), 2017 U.S. Dist. LEXIS 99238
   (E.D.N.Y. June 26, 2017) .................................................................................21

*Warburton v. Cty. of Ulster*,
   17-CV-1219 (GTS) (CFH), 2020 U.S. Dist. LEXIS 212031
   (N.D.N.Y. Nov. 13, 2020) .................................................................................15

*White v. Pauly*,
   137 S. Ct. 548 (2017) (per curiam) ..............................................................11, 12

**Cases**                                                                                    **Pages**

**Statutes**

42 U.S.C. § 1983.................................................................................................. 15, 19

**<u>Statutes</u>**                                                                                   **<u>Pages</u>**

Fed. R. Civ. P. 56......................................................................................................24

Fed. R. Civ. P. 56(c)..................................................................................................5

Fed. R. Civ. P. 56(c)(1)(B)........................................................................................6

Fed. R. Civ. P. 56.1...................................................................................................2

N.Y. Penal Law § 135.45.........................................................................................17

N.Y. Penal Law § 195.05.........................................................................................18

## PRELIMINARY STATEMENT

Defendants move for summary judgment dismissing plaintiff's action against Police Officers Jose Cadavid and Alyssa Trigueno for their efforts to determine the wellbeing of a minor child – plaintiff's daughter – in response to a complaint made by the child's mother. The claims against defendants are: (1) false arrest against PO Cadavid; (2) unlawful search against PO Cadavid and PO Trigueno; and (3) failure to intervene against Officer Trigueno for the alleged unlawful search and false arrest. The undisputed facts warrant the dismissal of all these claims.

Plaintiff's unlawful search claim against PO Cadavid should be dismissed because, as demonstrated by the undisputed facts, plaintiff's belligerence and refusal to cooperate with POs Cadavid and Trigueno, coupled with statements made by the minor child's mother, caused the officers to become concerned about the daughter's wellbeing, thus creating exigent circumstances warranting the entry. Plaintiff's unlawful search claim against PO Trigueno should be dismissed as she never entered plaintiff's apartment. Additionally, the failure to intervene claim against PO Trigueno should be dismissed because plaintiff's constitutional rights were not violated, and even if they had been, PO Trigueno had no realistic opportunity to intervene.

Finally, plaintiff's false arrest claim against PO Cadavid should be dismissed because plaintiff was not arrested. In the alternative, should the Court find that plaintiff was subjected to an arrest, there was at least arguable probable cause to arrest plaintiff because he prevented PO Cadavid from conducting his investigation into the safety of the child. Plaintiff's failure to intervene claim against PO Trigueno for the arrest should also be dismissed for the same reasons.

Accordingly, as more fully set forth below, it is respectfully submitted that defendants are entitled to summary judgment and all of plaintiff's claims should be dismissed.

## STATEMENT OF FACTS[1]

On November 5, 2016, at approximately 7:00 p.m., Wendy Sandy, the mother of plaintiff's minor child, called 911, hysterically crying (Rule 56.1 Statement of Undisputed Facts in Support of Defendants' Motion for Summary Judgment ("Def 56.1") at ¶¶ 16-17), and reported a custodial dispute between herself and plaintiff and that plaintiff would not give the child to her. *Id*. Police Officers Cadavid and Trigueno responded to the 911 call. (Def. 56.1 at ¶ 18) Upon arriving at the location of the call, the officers were met by Ms. Sandy. (Def. 56.1 at ¶ 19), who informed the officers that: (1) it was her day to see the daughter; (2) plaintiff refused to let her see the child; (3) she had not heard from her daughter; and (4) her daughter was not picking up her phone. (Def. 56.1 at ¶ 20) Ms. Sandy stated that she believed her daughter's life was in danger because plaintiff was a drug user and had drug dealers at his apartment. (Def. 56.1 at ¶¶ 22) Based on this information, the officers informed Ms. Sandy they would check on her daughter's safety and proceeded upstairs to plaintiff's apartment. (Def. 56.1 at ¶ 23)

When the officers arrived at plaintiff's apartment, they knocked on the door, announced themselves as police officers (Def. 56.1 at ¶¶ 28-29); stated they wanted to talk to plaintiff, and asked him to open the door – to which request plaintiff responded by saying "No,

---

[1] This statement of facts is based on the facts not disputed by plaintiff, in light of the *admissible* evidence, including, in part, statements by plaintiff. The assertion of a fact as undisputed for the purposes of this motion means that it is not disputed by plaintiff with admissible evidence; it is not an admission or stipulation by defendants of any fact for any other purpose, and defendants reserve the right to take a position contrary to any element of this statement of facts at trial. *See Hurt v. City of New York*, 15-CV-7612 (PKC), 2018 U.S. Dist. LEXIS 212531 at *6 (S.D.N.Y. Dec. 18, 2018) ("Acceptance of an adverse party's position for the sake of advancing an argument, which is otherwise contradicted by its own submissions, is not an admission entitling the adverse party to summary judgment."); *see also Vrazel v. Long Island R.R.*, 14-CV-6209 (ADS)(ARL), 2017 U.S. Dist. LEXIS 90557 at *6 (E.D.N.Y. June 13, 2017) (56.1 statements must "be supported by admissible evidence.") The purported deposition transcript of Wendy Sandy, the mother of plaintiff's child, is not admissible evidence, for the reasons stated in defendants' submissions in ECF Nos. 183; 200; 203; 204.

I'm good." (Def. 56.1 at ¶¶ 30-31)  When PO Cadavid again told plaintiff that he needed to see the child (Def. 56.1 at ¶ 33), plaintiff responded by saying "I can hear you fine" but did not open the door.  (Def. 56.1 at ¶¶ 34-35)  At this point, PO Cadavid told plaintiff that if he did not open the door, he might have to take it down.  (Def. 56.1 at ¶ 36)  Eventually plaintiff partially opened the door.  (Def. 56.1 at ¶¶ 37)  The officers inquired if plaintiff was Gary Rattray and told him to have his daughter come and talk to them.  (Def. 56.1 at ¶ 38)

Upon being asked if he knew Wendy Sandy and if she was the mother of his child, plaintiff responded by saying "Yes. She's my- that is the child's mother."  (Def. 56.1 at ¶ 41)  When PO Cadavid explained to plaintiff that Ms. Sandy was there to pick up the daughter (Def. 56.1 at ¶ 43), plaintiff replied that the daughter lived with him and was not home.  (Def. 56.1 at ¶ 42)  Plaintiff refused to respond to the officers' inquiries as to the whereabouts of the child. (Def. 56.1 at ¶¶ 47; 49)  He then attempted to close the door on the officers (Def. 56.1 at ¶ 50); however, PO Cadavid blocked the door from being closed with his foot.  (Def. 56.1 at ¶ 51)

Because plaintiff refused to tell the officers the whereabouts of the child and because of the information provided by Ms. Sandy, PO Cadavid was concerned for the child's wellbeing and entered plaintiff's apartment to determine if the child was present and safe.  (Def. 56.1 at ¶¶ 52-53)  PO Trigueno remained outside of- and did not enter- the apartment at any time. (Def. 56.1 at ¶ 54)  PO Cadavid searched plaintiff's apartment for approximately one minute and could not find the daughter in the apartment.  (Def. 56.1 at ¶¶ 56-57)  PO Cadavid then called his supervisor, because plaintiff continued to refuse to cooperate with the investigation into the whereabouts of the daughter.  (Def. 56.1 at ¶ 58)

PO Cadavid remained in plaintiff's apartment while waiting for the supervisor and continued to ask plaintiff about the child's whereabouts. (Def. 56.1 at ¶¶ 59; 61)  Plaintiff

continued to refuse to provide the location of the daughter yelling: "Why? She is safe. She's where she's supposed to be" and told PO Cadavid to "Get the eff out of my apartment." (Def. 56.1 at ¶ 62) Eventually, plaintiff said his daughter was with her friends, and when PO Cadavid inquired "which friends?" plaintiff responded by saying "well, do you know her friends?" (Def. 56.1 at ¶¶ 63-64) Plaintiff then went to his kitchen counter where he "[r]uled out a knife attack from the knife stand" (against PO Cadavid). (Def. 56.1 at ¶ 65) When plaintiff asked PO Cadavid if he could retrieve his phone; PO Cadavid said "Yeah. Go ahead." *Id*. Plaintiff called 911 without any interference from PO Cadavid. *Id*.

During the entire interaction between plaintiff and the officers, no attempts were made to place plaintiff into handcuffs, plaintiff was never placed in handcuffs, nor was he ever told he was under arrest, or that he would be charged with a crime. (Def. 56.1 at ¶¶ 79-82)

During his interaction with PO Cadavid, plaintiff was in possession of an email from the Court Attorney for the Hon. J. Michelle Sweeting, New York Family Court, which set forth Ms. Sandy's visitation dates. (Def. 56.1 at ¶ 26) However, it was not until the supervisor, Lt. Koch, arrived that plaintiff finally (Def. 56.1 at ¶ 72) informed (Lt. Koch) about his last appearance in family court regarding the details of the custody arrangement between him and Ms. Sandy. (Def. 56.1 at ¶ 73) Lt. Koch was able to elicit from plaintiff the whereabouts of the daughter. (Def. 56.1 at ¶ 74) After Lt. Koch confirmed the child's whereabouts and that she was safe, the investigation concluded and the officers left plaintiff's building. (Def. 56.1 at ¶ 74) Sometime later that day, Ms. Sandy completed a domestic incident report ("DIR") wherein she stated that: (1) she had gone to plaintiff's apartment to pick up her daughter that day; (2) she had been attempting to reach her daughter by phone; (3) the daughter was not answering her phone;

(4) she spoke to the plaintiff who told her that the daughter was not home and that Ms. Sandy would not be seeing her daughter.  (Def. 56.1 ¶ 78)

## STANDARD OF REVIEW

Summary judgment "should be rendered if the pleadings, the discovery and disclosure material on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  "A fact is material if it might affect the outcome of the suit under the governing law,' meaning that 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Higginbotham v. Sylvester*, 14-CV-8549 (PKC), 2016 U.S. Dist. LEXIS 151997, at **5-6 (S.D.N.Y. Nov. 2, 2016), *aff'd*, 741 Fed. App'x. 28, 31 (2d Cir. 2018) (summary order) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  "A court considering a motion for summary judgment must construe the evidence in the light most favorable to the non-moving party, and draw all *reasonable* inferences in its favor." *Excelled Sheepskin & Leather Coat Corp. v. Or. Brewing Co.*, 897 F.3d 413, 415 (2d Cir. 2018) (citation and internal quotations omitted) (emphasis added).  In order to demonstrate a "genuine issue of material fact" that requires a trial, *Allen v. Coughlin*, 64 F.3d 77, 79 (2d Cir. 1995), the nonmoving party "may not rely on conclusory allegations or unsubstantiated speculations," *Jeffreys v. Rossi*, 275 F. Supp. 2d 463, 473-74 (S.D.N.Y. 2003), *aff'd*, 426 F.3d 549 (2d Cir. 2005) (citation and internal quotations omitted).

Statements "that are devoid of any specifics, but replete with conclusions, are insufficient to defeat a properly supported motion for summary judgment."  *Bickerstaff v. Vassar College*, 196 F.3d 435, 452 (2d Cir. 1999).  Additionally, on a motion for summary judgment, a moving party may "support the assertion that moving party may support the assertion that a fact cannot be disputed" by, *inter alia*, "showing . . . that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1)(B).

**ARGUMENT**

**POINT I**

**OFFICER CADAVID'S SEARCH WAS SUPPORTED BY EXIGENT CIRCUMSTANCES**

It is well settled "that the warrant requirement must yield in those situations where exigent circumstances demand that law enforcement agents act without delay." *United States v. MacDonald*, 916 F.2d 766, 769 (2d Cir. 1990). The "test for determining whether a warrantless entry is justified by exigent circumstances is an objective one that turns on the district court's examination of the totality of circumstances confronting law enforcement agents in the particular case." *Id.* "The essential question in determining whether exigent circumstances justified a warrantless entry is whether law enforcement agents were confronted by an urgent need to render aid or take action." *Id*

Plaintiff's behavior, coupled with the information provided by Ms. Sandy, created exigent circumstances warranting PO Cadavid's entry and one-minute search of plaintiff's apartment. But even if the Court determines that sufficient exigent circumstances did not exist to justify the entry under the Fourth Amendment, the defendants are protected by qualified immunity because the entry was not prohibited by clearly established law.

**A. Exigent circumstances called for PO Cadavid's entry into plaintiff's apartment.**

In determining whether exigent circumstances exist the Court may consider the plaintiff's behavior as a contributing factor. *See e.g. United States v. Moreno*, 701 F.3d 64, 74 (2d Cir. 2012) (noting that the suspect's "unusual behavior . . . raised a legitimate concern that she would attempt to destroy or discard the drugs that the agents had probable cause to believe were inside.") Further, where children are involved, "[r]isks that a child will suffer actual injury, sexual abuse, or be left bereft of care and supervision" can support a basis for exigent circumstances. *Bey*

6

*v. La Casse*, 20-CV-9171 (LLS), 2021 U.S. Dist. LEXIS 55651 at *14 (S.D.N.Y. Mar. 22, 2021) (internal quotation marks omitted); *see also Ray v. Twp. of Warren*, 626 F.3d 170, 177 (3d Cir. 2010) ("Circumstances involving the protection of a child's welfare, even absent suspicions of criminal activity, may present an exigency permitting warrantless entry, but only if the officer reasonably believes that someone is in imminent danger.") (internal quotation marks omitted).

Reports from purported victims or witnesses can also support exigent circumstances. When information regarding an alleged crime is "received from a putative victim or an eyewitness, probable cause exists. . . . unless the circumstances raise doubt as to the person's veracity." *Curley v. Village Suffern*, 268 F.3d 65, 70 (2d Cir. 2001). In the absence of circumstances raising significant doubts of the putative victim's veracity – and none existed at the time of the alleged incident – the police are entitled, for probable cause purposes, to assume that the complaining victim is telling the truth. *See McIntosh v. City of New York*, 722 Fed. App'x. 42, 44 (2d Cir. 2018) ("[A]bsent circumstances that raise doubts as to the victim's veracity[,] . . . [t]he veracity of citizen complaints who are the victims of the very crime they report to the police is assumed.") (quoting *Lee v. Sandberg*, 136 F.3d 94, 103 (2d Cir. 1999)); *see also Keith v. City of New York*, 11-CV-3577 (KPF), 2014 U.S. Dist. LEXIS 166469, at *59 (S.D.N.Y. Dec. 1, 2014) (the "identification of an individual as a perpetrator of a crime by a putative victim of, or eyewitness to, the crime is in itself sufficient to establish probable cause, as long as it is reasonable to believe that the putative victim or eyewitness is telling the truth.").

Here, exigent circumstances existed based on the totality of both information known to the officers and plaintiff's actions. More specifically,

- the officers were aware that Ms. Sandy, the child's mother, had called 911 regarding a custodial dispute with plaintiff; (Def. 56.1 ¶¶ at 20)

- the 911 operator conveyed to the officers that the mother was in custodial dispute with the father, that she had been crying hysterically on the 911 call, and that the father refused to hand over the child to Ms. Sandy; (Def. 56.1 at ¶¶ 17-18)

- the officers were informed by a distraught mother that it was her day to visit her child; (Def. 56.1 at ¶ 21)

- Ms. Sandy had called her daughter who did not answer the phone; (Def. 56.1 at ¶ 21)

- Ms. Sandy had not heard from her daughter that day; (Def. 56.1 at ¶ 21)

- Ms. Sandy believed her daughter's life was in danger because: (i) plaintiff was a drug user; and (ii) plaintiff had had drug dealers to his apartment; (Def 56.1 at ¶ 22)

- plaintiff was uncooperative when interacting with the officers by:

  o refusing to open the door to his apartment even after being informed that the officers were there concerning the daughter; (Def. 56.1 at ¶¶ 30-35)

  o plaintiff refused to answer reasonable questions concerning the whereabouts of his daughter and responded by saying that "she was not at home" and not telling the officers the exact location of the daughter; (Def. 56.1 at ¶¶ 38; 40-41, 50); and

  o plaintiff proceeded to close the door to his apartment despite the officers' continuing to attempt to ascertain the location of the child. (Def. 56.1 at ¶ 51)

In *Hunsberger v. Wood,* 570 F.3d 546 (4th Cir. 2009), the court noted that the following facts supported existence of exigent circumstances: (1) "there was evidence that a minor girl was in the home;" (2) "the girl's stepfather said that she was not supposed to be at the home and was exceedingly concerned for her welfare;" and (3) the "fact that the girl was not answering her cellphone suggested the possibility that she was hurt or otherwise in need of assistance." *Id*. at 555-56. Similarly, in *Ringel v. Cty. of Nassau*, 18-CV-1930 (SJB), 2021 U.S. Dist. LEXIS 182698 at *27 (E.D.N.Y. Sept. 22, 2021), the Court found exigent circumstances existed where "the

8

Officers were faced with a report of a silent panic alarm and an individual—admittedly unaware of the alarm—outside his home, seeking to deter the Officers from discerning whether any occupants of the house were in danger and attempting to flee."

In a case with a similar factual predicate to the one here, the Court in *Howard v. Town of Dewitt*, 12-CV-870, 2015 U.S. Dist. LEXIS 64947 (N.D.N.Y. May 19, 2015), determined that it was reasonable for the defendant officers to believe that there were exigent circumstances, where, as here, one parent would not release custody to another, and would not cooperate with officers' attempts to ascertain the wellbeing of the child. Significantly, in *Howard*: (1) the officers did not receive any information that plaintiff's child was in danger or distress; (2) the defendant officer received information from the father of the child that plaintiff failed to arrive at the scheduled time for him to pick up the child; (3) the father of the child was unable to reach the plaintiff by phone or text; (4) the father expressed concern that he was unable to reach the plaintiff and the child; (5) the defendant officer went to plaintiff's apartment to make sure that the child was okay; (6) when the officers arrived at plaintiff's door and knocked several times they received no response; (7) eventually when the plaintiff asked – "who is it?" the defendant officer explained that he was a police officer and that officers were there to talk to her about the custody dispute; (8) the officers received no response, continued to knock and stated to the plaintiff that they were concerned that they were receiving no response, and asked if they could see the child; (9) the plaintiff eventually responded by saying "I'm not opening the door. There's no one hurt in here, no one's bleeding[;]" (10) the officers found this statement to be strange and unsettling, and led them to believe that something was wrong inside of the apartment; and (11) the officers proceeded to get the key to the apartment and entered it. *Id.* at **11-13.

Similarly, here, PO Cadavid was faced with a custodial dispute situation where the mother had not heard from her daughter the day she was allegedly supposed to pick her up. Like the plaintiff in *Howard*, plaintiff here proceeded to behave in an uncooperative and suspicious manner by providing unresponsive answers to PO Cadavid's reasonable questions about the whereabouts of the daughter such as - "she's wasn't home" (Def. 56.1 at ¶ 42) without saying where the daughter was or who she was with - during a custodial dispute, which caused the officers to become concerned for the daughter's safety. (Def. 56.1 at ¶ 53) And like the plaintiff in *Howard*, plaintiff then attempted to close the door. (Def. 56.1 at ¶ 50)

Further potential "harm to children alone may constitute exigent circumstances worthy of warrantless entry into a home." *Hogan v. Caputo*, 02-CV-1040 (LEK) (RFT), 2004 U.S. Dist. LEXIS 11204 at *22 (N.D.N.Y. June 21, 2004) (citing *United States v. Zabare*, 871 F.2d 282, 289 (2d Cir. 1989); *see also Schreiber v. Moe*, 596 F.3d 323, 330 (6th Cir. 2010) (citing plaintiff's "hostile and uncooperative" behavior in response to a knock on the door by police investigating a 911 call as supporting a finding of exigent circumstances).

As recognized by the Supreme Court – it "is an act of responsible citizenship for individuals to give whatever information they may have to aid in law enforcement." *Miranda v. Ariz.*, 384 U.S. 436, 478 (1966). Here, although plaintiff knew exactly where the daughter was and had an email chain from the New York State Family Court delineating the custodial arrangements (Def. 56.1 at ¶ 26), plaintiff did not provide this information to the officers. Instead, he behaved in an obstructive and belligerent manner, causing the officers to become increasingly concerned for the child's wellbeing. Plaintiff's actions alone provided ample cause for the officers to take measures to ensure the safety of the child.

When the safety of a child is in question, police officers do not have the luxury of time to take a wait-and-see what evidence may turn up posture, especially when receiving complaints in the context of custodial disputes. Indeed, children often have no way of reaching out for help on their own, and a concerned parent is their only lifeline. The information defendants received from Ms. Sandy, coupled with plaintiff's uncooperative behavior, created exigent circumstances warranting the entry into plaintiff's apartment. PO Cadavid's entry and one minute walkthrough of plaintiff's apartment (Def. 56.1 at ¶¶ 56-57) was reasonable and limited to what was necessary to conduct his investigation to ensure the safety of a child.

## B.    Defendants are entitled to qualified immunity for the entry into the apartment.

Even if the Court were to find that exigent circumstances did not exist here, that was not clearly established law at the time of this incident and defendants are entitled to qualified immunity.

Qualified immunity is immunity from suit rather than just a defense to liability. *See e.g., Lynch v. Ackley*, 811 F.3d 569, 576 (2d Cir. 2016) (citing *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). "Qualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (quoting *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (per curiam) (alterations and internal quotation marks omitted)); *see also Doninger v. Niehoff*, 642 F.3d 334, 345 (2d Cir. 2011) (same). "If the conduct did not violate a clearly established constitutional right, or if it was objectively reasonable constitutional right, or if it was objectively reasonable for the [official] to believe that his conduct did not violate such a right, then the [official] is protected by qualified immunity." *Doninger*, 642 F.3d at 345 (alterations in original) (internal quotation marks omitted). A right is clearly established when it is "sufficiently clear that *every reasonable official* would have understood that what he is doing violates that right."

*Mullenix v. Luna*, 577 U. S. 7, 11 (2015) (per curiam) (internal quotation marks omitted) (emphasis added); *see also Rivas-Villegas v. Cortesluna*, 142 S. Ct. 4, 7-8 (2021) (per curiam) (The Supreme "Court's case law does not require a case directly on point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate.") (citation and quotation omitted).

The Supreme Court has held that "clearly established law should not be defined at a high level of generality" but rather "must be particularized to the facts of the case." *White*, 137 S. Ct. at 552 (internal quotation marks and citations omitted).   "Rights must be clearly established in a particularized sense, rather than at a high level of generality; and such rights are only clearly established if a court can identify a case where an officer acting under similar circumstances was held to have acted unconstitutionally." *Grice v. McVeigh*, 873 F.3d 162, 166 (2d Cir. 2017) (citing *White*, 137 S. Ct. at  552 (internal quotation marks omitted)).

Thus, the affirmative defense of qualified immunity sets a "high bar" for those seeking to challenge it, and the Supreme Court has firmly established that "qualified immunity 'gives ample room for mistaken judgments' and 'provides ample protection to all but the *plainly incompetent* or those who knowingly violate the law.'" *Brown v. City of New York*, 13-CV-1018 (KBF), 2016 U.S. Dist. LEXIS 53365, at *17 (S.D.N.Y. Apr. 20, 2016) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986) (emphasis added)).

PO Cadavid is entitled to qualified immunity for the warrantless entry.  In *Ray*, 626 F.3d 170 (3d Cir. 2010), the defendant officers made a warrantless entry into plaintiff's house following a complaint made by the mother of plaintiff's child.  *Id*. at 172-73.  The mother of child told the police officers that she had arrived at plaintiff's house to pick up their daughter pursuant to a visitation order, that she saw someone that appeared to be her husband (plaintiff) in the house

and that she assumed that the child was with him at the time. *Id*. at 172. The officers attempted to knock on the door and call the plaintiff; however, they received no response. *Id*. Eventually, the officers entered plaintiff's house through the backdoor without a warrant out of concern for the safety of child. *Id*. at 172-73.

The Court found the officers were entitled to qualified immunity for the warrantless entry where defendants were: (1) aware of the contentious circumstances concerning the husband's and wife's divorce and custody proceedings between Ray and his wife; (2) the mother of the child was visibly concerned; (3) the mother had informed the officers that she was at there to pick up her daughter for scheduled visitation; (4) that her husband was in the home but failing to respond; and (5) that on previous occasions, the plaintiff had always come to the door and turned over his daughter when the police arrived. *Id*. at 178. In finding that the officers were entitled to qualified immunity, the Court noted the officers were "trying to do a difficult job in a potentially dangerous situation." *Id*.

In *Hunsberger* and *Howard*, the defendant officers believed their entry was warranted based on similar facts confronted by PO Cadavid prior to making entry. Both cases involved children. In *Hunsberger*, the stepfather informed the officers that the daughter was not supposed to be at the location that she was purportedly at and her unresponsiveness to phone calls, as the court held, "suggested the possibility that she was hurt or otherwise in need of assistance." *Id*. at 555. Similarly, in *Howard*, the officers grew concerned following the mother's unwillingness to allow the officers to see the child after being informed of their reason for being there and responding by saying "I'm not opening the door. There's no one hurt in here, no one's bleeding." *Id*. at 11-13. Under such facts, the entry was supported by exigent circumstances. *Id*.

Thus, *Hunsberger*, *Howard*, and *Ray* demonstrate that, under circumstances that PO Cadavid confronted, reasonable officers could disagree on whether a warrantless entry was warranted, and, as such, PO Cadavid is entitled to qualified immunity. *See Duncan v. City of New York*, 11-CV-3901(ENV) (JO); 12-CV-1565 (ENV) (JO), 2017 U.S. Dist. LEXIS 114607 at *35 (E.D.N.Y. July 17, 2017) (defendants "entitled to qualified immunity for any unlawful entry into the barbershop given that 'reasonable officers could disagree as to whether exigent circumstances were present.'" (*quoting Loria v. Gorman*, 306 F.3d 1271, 1287 (2d Cir. 2002)); *see also Novo v. City of Danbury*, 18-CV-907 (VAB), 2020 U.S. Dist. LEXIS 141499 at *23 (D. Conn. Aug. 7, 2020) (granting qualified immunity to the defendant officers and holding that reasonable officers could have believed that nonparty witness could give consent to enter plaintiff's house).

Accordingly, PO Cadavid is entitled to qualified immunity, as is PO Trigueno to the extent that she could be held liable for PO Cadavid's entry into the apartment.

## POINT II

### PLAINTIFF'S UNLAWFUL SEARCH CLAIM SHOULD BE DISMISSED AGAINST PO TRIGUENO

Plaintiff's unlawful search claim against PO Trigueno should be dismissed because, by plaintiff's own admission, PO Trigueno did not cross the threshold into plaintiff's apartment. (Def. 56.1 at ¶ 56)  Instead, plaintiff acknowledges that PO Trigueno stood in the hallway outside of his apartment. *Id*.  "It is the established law of this Circuit that the common halls and lobbies of multi-tenant buildings are not within an individual tenant's zone of privacy even though they are guarded by locked doors." *United States v. Holland*, 755 F.2d 253, 255 (2d Cir. 1985).

Therefore, PO Trigueno, having never crossed the threshold into plaintiff's apartment, did not violate plaintiff's rights.  Under such circumstances, courts have dismissed similar claims.  *See Warburton v. Cty. of Ulster*, 17-CV-1219 (GTS) (CFH), 2020 U.S. Dist.

LEXIS 212031 at *33 (N.D.N.Y. Nov. 13, 2020) (dismissing plaintiff's unlawful search and seizure claim where there was no evidence that defendants entered plaintiff's apartment or crossed the threshold into plaintiff's apartment); *Serby v. Town of Hempstead,* 04-CV-901 (DRH) (MLO), 2006 U.S. Dist. LEXIS 103697 at **20-22 (E.D.N.Y. Sept. 30, 2006)  (dismissing plaintiff's unlawful search claim where the defendant officer did not enter plaintiff's apartment or cross the threshold of plaintiff's apartment without consent).  Because PO Trigueno never entered plaintiff's apartment or crossed the threshold into his apartment or searched his apartment,  the unlawful search claim against PO Trigueno should be dismissed.  Moreover, for the reasons articulated above, if it is somehow determined that PO Trigueno could be held liable for the entry into plaintiff's apartment, she is entitled to qualified immunity.

## POINT III

### PLAINTIFF'S FALSE ARREST CLAIM SHOULD BE DISMISSED BECAUSE PLAINTIFF WAS NOT ARRESTED

Plaintiff's false arrest claim against PO Cadavid should be dismissed because: (1) plaintiff was never arrested; and (2) if he was arrested, the arrest was justified by probable cause, or at a minimum, arguable probable cause entitling defendants to qualified immunity.

The elements of a false arrest under 42 U.S.C. § 1983 "are substantially the same as the elements of a false arrest claim under New York law." *Singer v. Fulton County Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995).  For proper false arrest claim, plaintiff must show that: (1) the defendant intended to confine the plaintiff; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to the confinement; and (4) the confinement was not otherwise privileged. *Id*.  Probable cause is an "absolute defense" to a false arrest claim. *Jaegly v. Couch*, 439 F.3d 149, 152 (2d Cir. 2006).

A police officer "has probable cause to arrest when he or she has 'knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime.'" *Id.*  An officer is entitled to rely on the information received from a putative victim as a basis for probable cause for an arrest. *Martinez v. Simonetti*, 202 F.3d 625, 634 (2d Cir. 2000).  Further, in the absence of circumstances raising significant doubts of the putative victim's veracity, the police are entitled, for probable cause purposes, to assume that the complaining victim is telling the truth. *See McIntosh v. City of New York*, 722 Fed. App'x. 42, 44 (2d Cir. 2018) ("[A]bsent circumstances that raise doubts as to the victim's veracity[,] . . . [t]he veracity of citizen complaints who are the victims of the very crime they report to the police is assumed.") (*quoting Lee v. Sandberg*, 136 F.3d 94, 103 (2d Cir. 1999)); *see also Keith v. City of New York*, 11-CV-3577 (KPF), 2014 U.S. Dist. LEXIS 166469, at *59 (S.D.N.Y. Dec. 1, 2014) (the "identification of an individual as a perpetrator of a crime by a putative victim of, or eyewitness to, the crime is in itself sufficient to establish probable cause, as long as it is reasonable to believe that the putative victim or eyewitness is telling the truth.")

Additionally, probable cause "can exist even where it is based on mistaken information, so long as the arresting officer acted reasonably and in good faith in relying on that information." *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994).  A police officer's function is to "apprehend those suspected of wrongdoing, and not to finally determine guilt through a weighing of the evidence." *Krause v. Bennett*, 887 F.2d 362, 372 (2d Cir. 1989).  Moreover, an arrest is valid as long as there was probable cause to believe that any offense was committed or is being committed. *Devenpeck v. Alford*, 543 U.S. 146, 152-53 (2004).

16

**A.    Plaintiff was not arrested.**

A "claim for false arrest must be premised on actual arrest." *Bissinger v. City of New York*, 06-CV-2325 (WHP), 06-CV-2326 (WHP), 2007 U.S. Dist. LEXIS 70155 at *23 (S.D.N.Y. Sept. 24, 2007) (citation omitted).  Here, plaintiff was not arrested.  Plaintiff admits that PO Cadavid never told him that he was going to be charged with a crime (Def. 56.1 at ¶ 88).  PO Cadavid never attempted to place plaintiff in handcuffs and, in fact, plaintiff was never placed in handcuffs; in fact, PO Cadavid never made physical contact with the plaintiff.  (Def. 56.1 at ¶¶ 66; 85-86; 88)  Indeed, plaintiff was not prevented by PO Cadavid from retrieving his cell phone; calling 911; and moving around his apartment.  (Def. 56.1 at ¶ 72)

Although PO Cadavid did not leave the apartment upon plaintiff's request, such "refusal to leave [p]laintiff's apartment is not tantamount" to arresting him.  *Rattray v. Cadavid*, 17-CV-8560 (PGG) (KHP), 2019 U.S. Dist. LEXIS 155397 at *17 (S.D.N.Y. Sept. 9, 2019).  Therefore, because plaintiff was not arrested, this claim against PO Cadavid should be dismissed.  *See Porat v. Lincoln Towers Cmty. Ass'n*, 04-CV-3199 (LAP), 2005 U.S. Dist. LEXIS 4333 at *11 (S.D.N.Y. Mar. 17, 2005) (dismissing plaintiff's false arrest claim where no arrest occurred).

**B.    Probable cause existed for plaintiff's arrest.**

Even if the interaction in the apartment between plaintiff and PO Cadavid can be construed as an arrest, such an arrest would be supported by probable cause based on the information received from the mother and plaintiff's uncooperative behavior.  More specifically, under the circumstances confronted by PO Cadavid, there was probable cause to believe that plaintiff was committing the offense of custodial interference.  *See* N.Y. Penal Law § 135.45 (a "person is guilty of custodial interference in the second degree when . . .  [b]eing a relative of a child less than sixteen years old,  intending to hold such child permanently or for a protracted

17

period, and knowing that he has no legal right to do so, he takes or entices such child from his lawful custodian."

Similarly, here, the officers were presented with information from the mother that it was her day to see her daughter; that her daughter had not been responding to her calls; and that plaintiff refused to allow her to see her daughter. Plaintiff may argue that the mother did not provide any documentation showing that she had custody of the child on that day. But neither did the plaintiff when he spoke to the officers, and plaintiff refused to provide the location of the daughter to the officers after they made this reasonable request. Additionally, the officers had no reason to doubt the veracity of the mother's complaint to them. Therefore, it would have been reasonable for PO Cadavid to believe that plaintiff was unlawfully withholding the child from the mother.

Additionally, as PO Cadavid attempted to ascertain the location of the child, plaintiff: (1) attempted to close the door on the officers; and (2) refused to provide the exact location of the daughter to PO Cadavid thereby obstructing PO Cadavid's investigation.[2] A person is guilty of obstructing governmental administration ("OGA") "when he intentionally obstructs, impairs or perverts the administration of law or other governmental function." N.Y. Penal Law § 195.05.

Here, plaintiff's refusal to answer questions about the daughter's whereabouts and attempting to close the door to his apartment while PO Cadavid was conducting his investigation constituted OGA. *See Dowling v. City of New York*, 11-CV-4954 (NGG) (RML), 2013 U.S. Dist.

---

[2] Although plaintiff testified that he told PO Cadavid the child was with her friends *after* PO Cadavid entered his apartment to look for her, when asked a follow up question about which friends she was with, plaintiff replied by asking – "do you know her friends?" (Def. 56.1 at ¶ 64) without telling PO Cadavid the exact location of the child.

LEXIS 142108 at *13 (E.D.N.Y. Sept. 30, 2013) (holding that failure to obey a police order that "creates some other hazard or interference, it can rise to the level of obstruction necessary for obstructing government administration"); *Hogan v. Buttofocco*, 07-CV-0731 (NAM) (DRH), 2009 U.S. Dist. LEXIS 89185 at *20 (N.D.N.Y. Sept. 28, 2009) (holding that probable cause to arrest plaintiff for OGA where plaintiff refused to speak to police officers that responded to a 911 call from plaintiff's son who reported that plaintiff was "going crazy" and had a hammer); *Antic v. City of New York*, 273 F. Supp. 3d 445, 453 (July 27, 2017) (noting that "district courts in this Circuit have interpreted the statute broadly, holding that merely approaching the police, or speaking during the course of a police action, or disregarding police instructions, will support a conviction.") Therefore, there was probable cause to arrest plaintiff for OGA.

Further, any prolongation in plaintiff's interaction with the officers was caused by his own unwillingness to tell the officers where the daughter was. *See Esgro v. Serkiz*, 06-CV-0365, 2007 U.S. Dist. LEXIS 5026 at **12-13 (N.D.N.Y. Jan. 23, 2007) (noting that plaintiff "caused certain delays because of his uncooperative behavior.") Indeed, after plaintiff told Lt. Koch where the daughter was and the officers were able to confirm her location and safety, the officers departed without any further interaction with the plaintiff. (Def. 56.1 at ¶¶ 72-75)

## C.    Defendants are entitled to qualified immunity for any arrest.

Additionally, defendants are entitled to qualified immunity for plaintiff's false arrest claim.[3] "In the context of § 1983 actions for false arrest, an arresting officer is entitled to qualified immunity so long as arguable probable cause was present when the arrest was made." *Arroyo v. City of New York*, 683 Fed. App'x. 73, 74 (2d Cir. 2017). For the same reasons explained

---

[3] Although plaintiff may argue that it was not his intent to obstruct PO Cadavid's investigation, "the practical restraints on police in the field are greater with respect to ascertaining intent . . ., the latitude accorded to officers considering the probable cause issue in the context of *mens rea* crimes must be correspondingly great." *Kass v. City of New York*, 864 F.3d 200, 210 (2d Cir. 2017).

above, under the circumstances faced by PO Cadavid there was at least arguable probable cause

to arrest plaintiff for custodial interference or OGA. *See Munoz v. City of New York*, 17-CV-9583

(LAK) (DF), 2021 U.S. Dist. LEXIS 169439 at *61 (S.D.N.Y. Sept. 7, 2021) (defendants entitled

to qualified immunity on plaintiff's false arrest claim for OGA where plaintiff's explanation that

she was merely attempting to help her son, who was being committed to a hospital, step into the

ambulance when she hooked his arm and he stepped back out of the ambulance, that "a rational

jury would not be able to conclude that no reasonably competent officer would have acted" as the

defendant officer did in arresting plaintiff for OGA.)

   Therefore, plaintiff's false arrest claim against PO Cadavid should be dismissed

and he is entitled to qualified immunity for the false arrest claim (as is PO Trigueno to the extent

that she could be held liable for any arrest).

**POINT IV**

**PLAINTIFF'S FAILURE TO INTERVENE
CLAIMS AGAINST PO TRIGUENO SHOULD
BE DISMISSED**

   Plaintiff's claim against PO Trigueno for failure to intervene for the alleged

unlawful search should be dismissed. To establish a failure to intervene claim, "a plaintiff must

prove the following four elements: (1) that a constitutional violation was being committed against

the plaintiff; (2) that the officer knew, or deliberately ignored, the fact that the constitutional

violation was going to be, or was being, committed; (3) that the defendant had a reasonable

opportunity to intervene and prevent the harm; and (4) that the defendant did not take reasonable

steps to intervene." *Johnson v. Bieling*, 20-CV-1124 (GTS) (ML), 2021 U.S. Dist. LEXIS 2790

at n.12 (N.D.N.Y. Jan. 6, 2021) (citations omitted). Additionally, "generally, officers cannot be

held liable for failure to intervene in incidents that happen in a matter of seconds." *Henry v.

Dinelle*, 10-CV-0456 (GTS) (DEP), 2011 U.S. Dist. LEXIS 136583 at *13 (N.D.N.Y. Nov. 29,

20

2011).  Moreover, "the failure to intervene must be intentional and not merely the negligent failure to perceive an unlawful arrest or search."  Further, "at the summary judgment stage, a failure to intervene claim cannot proceed against an officer who is alleged to have been a direct participant in the claimed constitutional violation."  *Cabrera v. City of New York*, 16-CV-1098 (GBD), 2017 U.S. Dist. LEXIS 199664 at \*32 (S.D.N.Y. Dec. 4, 2017).

**A.    Plaintiff's failure to intervene claim for the alleged unlawful search should be dismissed.**

As an initial matter, because, for the reasons set forth above, there was no violation of plaintiff's constitutional rights, this claim should be dismissed against PO Trigueno.  *See Walker v. City of New York*, 15-CV-500 (NG) (ST), 2017 U.S. Dist. LEXIS 99238 at \*14 (E.D.N.Y. June 26, 2017) (plaintiff's claim for failure to intervene should be dismissed because of the "absence of an underlying constitutional violation.")

Further, plaintiff cannot show that PO Trigueno had a realistic opportunity to intervene to prevent the entry into plaintiff's apartment.  According to his own testimony, immediately after plaintiff said that he was done talking to the officers and attempted to close his door, PO Cadavid's foot blocked the door, and he entered the apartment.  (Def. 56.1 at ¶ 52)  At most, what plaintiff describes is a rapidly occurring event.  Additionally, there are no facts that indicate that PO Cadavid gave any notice to PO Trigueno that he would be entering plaintiff's apartment prior to his entry.  Under similar circumstances, courts have dismissed such claims.  *See e.g. Baksh v. City of New York*, 15-CV-7065 (NGG) (ST), 2018 U.S. Dist. LEXIS 60167 at \*31 (E.D.N.Y. Mar. 31, 2018) (dismissing plaintiff's failure to intervene claim with respect to the alleged excessive force used against him by the defendant because, plaintiff did not provide details on how quickly the defendant officer slammed him against the car and that the other defendant officers had a realistic opportunity to stop it); *Sash v. United States*, 674 F. Supp. 2d 531, 545

(S.D.N.Y. 2009) (granting defendants' summary judgement on plaintiff's failure to intervene claim where the alleged incident involving an officer that rushed the plaintiff and tackled him to the ground lasted less than 30 seconds); *Johnson v. Cty. of Nassau*, 09-CV-4746 (JS) (MLO), 2010 U.S. Dist. LEXIS 101752 at *11 (S.D.N.Y. Sept. 27, 2010) (dismissing failure to intervene claim pertaining to the alleged illegal search because plaintiff alleged that the officer "immediately" searched his backpack and "contemporaneously" stuck his hand in plaintiff's pockets, and therefore the defendant officers had "no reasonable opportunity to intervene.")

Here, plaintiff stated that "immediately" after he told the officers that he was done talking to them and proceeded to terminate the conversation by closing his door, PO Cadavid's foot prevented the door from being closed and he entered the apartment.  (Def. 56.1 at ¶ 52)  Thus, PO Trigueno did not have a realistic opportunity to intervene to prevent PO Cadavid from crossing the threshold into plaintiff's apartment as this was a rapidly occurring event.  Therefore, this claim should be dismissed against PO Trigueno.  Moreover, because plaintiff maintains an unlawful search claim against PO Trigueno, plaintiff's failure to intervene claim for the alleged unlawful search should be dismissed because "at the summary judgment stage, a failure to intervene claim cannot proceed against an officer who is alleged to have been a direct participant in the claimed constitutional violation."  *Cabrera v. City of New York*, 16-CV-1098 (GBD), 2017 U.S. Dist. LEXIS 199664 at *32 (S.D.N.Y. Dec. 4, 2017).  Therefore, plaintiff's claim for failure to intervene for the alleged unlawful search should be dismissed.

PO Trigueno is also entitled to qualified immunity for any failure to intervene. To "overcome the defense of qualified immunity for failure to intervene, the failure to intercede must be under circumstances making it objectively unreasonable for [the defendant] to believe that his fellow officers' conduct did not violate those rights."  *Hill v. Quigley*, 12-CV-8691 (AKH), 2017

22

U.S. Dist. LEXIS 221732 at *9 (S.D.N.Y. Jan. 25, 2017) (citation and internal quotation marks omitted). PO Trigeuno is entitled to qualified immunity for the entry into the apartment for the same reasons set forth above.

**B.     Plaintiff's failure to intervene claim for the alleged false arrest should be dismissed.**

Plaintiff's claim against PO Trigueno for failure to intervene for the alleged false arrest should be dismissed because plaintiff was not arrested, and alternatively, there was at least arguable probable cause for his arrest. *See infra* Point III; *see also Munoz*, 2021 U.S. Dist. LEXIS 169439 at *63 (dismissing plaintiff's failure to intervene claims where there was at least arguable probable cause to arrest plaintiff for OGA); *Levy v. City of New York*, 935 F. Supp. 2d 575, 595 (E.D.N.Y. 2013) (dismissing plaintiff's failure to intervene claim for false arrest where plaintiff's false arrest claim was dismissed).

Additionally, for the reasons articulated above, PO Trigueno is entitled to qualified immunity for the failure to intervene for the alleged false arrest claim. Therefore, there were no circumstances warranting PO Trigueno's intervention and, as such, she is entitled to qualified immunity. *See Bartlett v. City of New York*, 03-CV-1961 (CPS), 2005 U.S. Dist. LEXIS 4829 at *30 (E.D.N.Y. Feb. 18, 2005) (defendants entitled to qualified immunity where it was "objectively reasonable for the defendant officers to believe that their conduct was lawful at the time of the challenged acts" and noting that "a rational jury could not find that the officer's judgment was so flawed that no reasonable officer would have made a similar choice") (citing *Lennon v. Miller*, 66 F.3d 416, 420, 424-25 (2d Cir. 1995)). Plaintiff's failure to intervene claim for the alleged false arrest against PO Trigueno should be dismissed.

## CONCLUSION

For the reasons set forth above, it is respectfully submitted that defendants are entitled to summary judgment, and that this Court grant defendants' motion for summary judgment pursuant to Fed. R. Civ. P. 56.

Dated:     New York, New York
           April 15, 2022

By:     *Andrey Udalov*
        Andrey Udalov
        *Assistant Corporation Counsel*