| | | |
|---|---|---|
| NEW YORK |  | HANOI |
| LONDON | | HO CHI MINH CITY |
| SINGAPORE | | SHANGHAI |
| PHILADELPHIA | *FIRM and AFFILIATE OFFICES* | ATLANTA |
| CHICAGO | | BALTIMORE |
| WASHINGTON, DC | | WILMINGTON |
| SAN FRANCISCO | MELISSA S. GELLER | MIAMI |
| SILICON VALLEY | DIRECT DIAL: +1 212 692 1077 | BOCA RATON |
| SAN DIEGO | PERSONAL FAX: +1 973 556 1562 | PITTSBURGH |
| LOS ANGELES | *E-MAIL:* MSGeller@duanemorris.com | NEWARK |
| BOSTON | | LAS VEGAS |
| HOUSTON | *www.duanemorris.com* | CHERRY HILL |
| DALLAS | | LAKE TAHOE |
| FORT WORTH | | MYANMAR |
| AUSTIN | | |
| | | ALLIANCES IN MEXICO |

August 28, 2023

**VIA ECF**

Honorable Paul G. Gardephe
United States District Court
Southern District of New York
Thurgood Marshall Courthouse
40 Foley Square
New York, NY 10007

      Re:    <u>Wentworth Rattray v. Police Officer Cadavid, et al.,
               17-CV-8560 (PGG)(KHP)</u>

Dear Judge Gardephe:

      We write to provide a proffer concerning economic damages, as discussed in the pre-trial conference on August 25, 2023.

      We expect Mr. Rattray will testify that his income suffered as a result of Officers Cadavid's and Trigueno's violations of his Fourth Amendment rights on November 5, 2016. In furtherance of those damages, we expect that Mr. Rattray will proffer the following testimony:

      In 2016, Mr. Rattray worked for Ernst & Young ("E & Y"). His job required extensive travel to satisfy client obligations. While he was gone, Mr. Rattray would arrange for his daughter to be cared for by a few consistent babysitters. These sitters would come and stay in the apartment and ensure the minor child attended school and all appointments. Mr. Rattray received a salary. He also received a yearly bonus. The yearly bonus was paid in the following year. So, for example, the bonus for 2016 would be paid in 2017.

      Mr. Rattray started at E & Y earned $128,269.00 in 2015 and $139,880.00 in 2016. He will testify that he received a small increase in salary in late 2016, before the start of the year. He also received a small bonus. His salary in 2016 thus reflects his performance in 2015, not just 2016.



Honorable Paul G. Gardephe
August 28, 2023
Page 2

      In 2017, Mr. Rattray earned $149,143.00, reflecting the 2016 end of year raise and 2016 bonus.  During 2017, his performance suffered.  He was no longer able to travel for his job, in part because he was afraid that he would come home to find his child gone or someone would try to take her from the sitter, creating unmanageable anxiety during work trips.  This decline in job performance and availability resulted in his termination in 2018.  The $146,028.00 he reported in 2018 consisted of his salary prior to his termination, and his total severance.

      Following his termination, Mr. Rattray was unable to find a job in his field without taking a substantial cut in pay and step back in his career.  He had no earnings for 2019.  He eventually found a job with the United States Census Bureau and then with the Veteran's Health Administration earning $32,422.00 in 2020.  He continued working for the VA earning $102,866.88 in 2021 and $101,633.45 in 2022.

      We understand the Court's concern with the damages claimed by Mr. Rattray for economic damages.  But, we do request the opportunity to put Mr. Rattray's earnings from 2015 through 2021 before the jury.  They are both relevant and part of the overall damage suffered by Mr. Rattray.  We think, at the very least, he is entitled to ask for economic damages for the two years that he was effectively out of work – 2019 and 2020.

      We thank the Court for the opportunity to supplement the record.

Respectfully submitted,

*/s/ Melissa S. Geller*

Melissa S. Geller

cc: All counsel of record (via ECF)