UNITED STATES DISTRICT COURT FOR THE
<u>SOUTHERN DISTRICT OF NEW YORK</u>

**WENTWORTH RATTRAY**

Plaintiff,

      -against-

POLICE OFFICER **CADAVID**, BADGE NO. 9085,
IN HIS INDIVIDUAL AND OFFICIAL CAPACITY;
POLICE OFFICER ALYSSA **TRIGUENO**, IN HER
INDIVIDUAL AND OFFICIAL CAPACITY.

Defendants,

---

**Declaration of Wentworth Rattray
(Supplement)**

Jury Trial Demanded, ECF
**17-CV-8560 (PGG-KHP)**

---

Wentworth Rattray declares under penalty of perjury and pursuant to 28 U.S.C. SS 1746, that the following statements are true and correct.

1) Plaintiff in the matter Rattray v Cadavid 17-CV-8560 (PGG-KHP) heard trial testimony presented by NYPD Police Officer Jose Cadavid in the presence of jurors, that I know to be false and misleading.

   a) In his testimony, attached, Officer Cadavid stated, among other things, that he saw the Lieutenant place a call to check on the welfare of the child, that he heard the Lieutenant's side of the call, that he either "heard the lieutenant asking if their daughter was at the location -- at the number that he was calling, and [Lieutenant] asked for the address." [Pg. 391 ln. 22] and that the Lieutenant relayed to Officer Cadavid that "The next step was to send a police car over to the location where their daughter was, and to physically confirm that she was there and she was okay." [Pg. 394] in the attached court transcript.

2) I make this declaration based on:
a) my personal knowledge and recollection of the events of November, 5th 2016 and my personal knowledge and recollection of the testimony presented on August 31st 2023.

3) I, Wentworth Rattray, asserts that I told Officer Cadavid at various times that this was an ongoing custody case, that my daughter lives with me, that she was safe, and that she was on a playdate, and was where she was supposed to be.

4) I, Wentworth Rattray, asserts that I repeated for the responding supervisor, Lieutenant Khosh, a summary of the statements that I had made to Officer Cadavid; that this was an ongoing custody case, that my daughter lives with me, that she was safe, and that she was on a playdate, and was where she was supposed to be.

5) I, Wentworth Rattray, asserts that, additionally, I showed an email thread to Lieutenant Khosh from which he was able to make a decision and directed Officer Cadavid to leave my apartment.

6) I, Wentworth Rattray, asserts that I did not show this email to Officer Cadavid.

7) I, Wentworth Rattray, asserts that at no time did officer Khosh request contact information or an address where the child could be found, nor did I provide any additional contact information to Lieutenant Khosh. Lieutenant Khosh did not place a phone call while in my apartment.

8) I Wentworth Rattray, asserts that to my belief and understanding, my minor child did not have any interactions with any NYPD police officers on the evening of November 5th 2016.

9) I further assert for completeness, that:

   a) prior to 8/13/2021 I was unaware that anyone had made allegations that I was a drug-user and that I was associating with drug-dealers in my home.

   b) I am not, and have never been a consumer of illegal drugs.

   c) I do not now, nor have I ever, knowingly associated with illegal drug-users or drug-dealers, nor do I have drug dealers visiting my home.

10) Prior to Cadavid's 8/31/2023 trial testimony I was unaware that anyone had made allegations that the lieutenant placed a call while at my home to check on my daughter or that according to Officer Cadavid "He was going -- he sent a unit over to that address to physically confirm that she was there and she was okay."

11) I have found no discovery item that records or references a call placed to check on the child on November 5th 2016.

12) Plaintiff requests that any such record be produced.

   I swear and affirm that the statements above are based on my own personal experience and are true to in my belief and accurate to the best of my recollection.

_signature_

Wentworth Rattray, Pro Se

September 01, 2023    State of New York
County of New York

Notary          Sworn to before me this
                15t day of September 2023

_signature_    09/01/2023          Omar Luciano
                                   Notary Public, State of New York
                                   No. 04LU6435950
                                   Qualified in New York County
                                   Commission Expires July 05, 20 26

**Appendix.** Excerpted from 8/31/2023 daily-transcript of trail Testimony of NYPD PO Jose

Cadavid in the trial of 17-CV-8560 (PGG-KHP).

Pg. 391 ln. 22

" Q. What, if any, further action did the lieutenant take that

you observed?

A. The lieutenant took that information. There was a call

made to where his daughter was to confirm that she was there.


MS. GELLER: Objection, your Honor. Foundation.

THE COURT: Well, can you explore that?

MS. FADDIS: Yes, your Honor. The specific question

was what he observed, so I assume that's what he's responding

to, but let me pause here.

Q. And, Officer Cadavid, let me ask you, you mentioned a phone

call. Were you present for that phone call?

A. Yes.

Q. Okay. Did you observe the lieutenant make a phone call?

A. Yes.

Q. Could you hear his side of the phone call?

A. The lieutenant's side, yes.

Q. Could you hear the other side?

A. No.

Q. Okay. Based on the lieutenant's side of the phone call,

did you have an understanding of what the phone call consisted

of?

A. Yes.

Q. Okay. And could you describe what the phone call consisted

of?

Q. And, Officer Cadavid, let me ask you, you mentioned a phone

call. Were you present for that phone call?

A. Yes.

Q. Okay. Did you observe the lieutenant make a phone call?

A. Yes.

Q. Could you hear his side of the phone call?

A. The lieutenant's side, yes.

Q. Could you hear the other side?

A. No.

Q. Okay. Based on the lieutenant's side of the phone call,

did you have an understanding of what the phone call consisted

of?

A. Yes.

Q. Okay. And could you describe what the phone call consisted

of?

A. I heard the lieutenant asking if their daughter was at the

location -- at the number that he was calling, and he asked for

the address.

Q. Okay. Do you know, again based on your own observations,

if the lieutenant took any further action to ascertain the

... PG 393

location of the plaintiff's daughter?

A. Yes, he did.

Q. And what was that?

A. He was going -- he sent a unit over to that address to

physically confirm that she was there and she was okay.

MS. GELLER: Objection, your Honor. This is now

hearsay.

THE COURT: I'm sorry. I can't hear you.

MS. GELLER: This is now hearsay.

THE COURT: Well, you're going to have to lay a

foundation for how he knows this.

MS. FADDIS: Sure, your Honor.

BY MS. FADDIS:

Q. Did you have a further conversation with the lieutenant

after the phone call that he made?

A. Yes.

Q. Did he communicate to you that he intended to take any

further steps with regard to the plaintiff's daughter?

A. Yes.

Q. Okay. And what did he communicate with you?

MS. GELLER: Objection. Still hearsay, your Honor.

MS. FADDIS: It goes to his understanding, your Honor.

THE COURT: I'll see the lawyers at sidebar.

(Continued on next page)

... Pg 394 ... sidebar omitted

(In open court; jury present)

BY MS. FADDIS:

Q. Officer Cadavid, I'm just going to reask the last question.
Did you have an understanding of what the next steps Lieutenant
Khosh continued to take were?

A. Yes.

Q. Could you describe what he relayed to you?

A. The next step was to send a police car over to the location
where their daughter was, and to physically confirm that she
was there and she was okay.

Q. All right. After that happened, what did you do?

A. After that happened, we were satisfied that the daughter
was okay, we left.

Q. When you say "we," who are you referring to?

A. I'm sorry. My partner and Lieutenant Khosh.

Q. Okay. Did you ever return to Ms. Sandy, to speak with
Ms. Sandy?

A. Yes.

Q. Okay. Did you speak with her or did Officer Trigueno speak
with her or someone else?

A. I believe I spoke to her.

Q. Did Ms. Sandy complete a domestic incident report as far as
you know?