UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| WENTWORTH RATTRAY, | : | |
| Plaintiff, | : : : | |
| v. | : : | |
| THE CITY OF NEW YORK, POLICE OFFICER JOSE CADAVID (BADGE NO. 9085), POLICE OFFICER SGT MERVIN BAUTISTA, and POLICE OFFICER ALYSSA TRIGUENO, | : : : : : | CIVIL ACTION NO. 17-CV-8560 (PGG)(KHP) |
| Defendants. | : : | |

**<u>PLAINTIFF WENTWORTH RATTRAY'S MEMORANDUM OF LAW IN SUPPORT HIS MOTION FOR A NEW TRIAL</u>**

DM1\14518898

i

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................ 1

FACTUAL BACKGROUND ...................................................................................................... 1

SUMMARY OF EVIDENCE PRESENTED AT TRIAL ............................................................ 2

ARGUMENT ................................................................................................................................ 5

CONCLUSION ........................................................................................................................... 13

# **TABLE OF AUTHORITIES**

**Cases**

*Berry v. Dep't of Corr.*,
  No. 93 CIV.6448 BSJ, 2004 WL 287666 (S.D.N.Y. Feb. 11, 2004)......................................12

*Brigham City, Utah v. Stuart*,
  547 U.S. 398 (2006)...............................................................................................................6

*Coolidge v. New Hampshire*,
  403 U.S. 443, 91 S. Ct. 2022 (1971), *holding modified by Horton v.
  California*, 496 U.S. 128 (1990) ..........................................................................................6

*DLC Mgmt. Corp. v. Town of Hyde Park*,
  163 F.3d 124 (2d Cir. 1998)...................................................................................................5

*Geressy v. Digital Equip. Corp.*,
  980 F. Supp. 640 (E.D.N.Y. 1997) ......................................................................................12

*Harris v. O'Hare*,
  770 F.3d 224 (2d Cir. 2014)...................................................................................................6

*Hurlman v. Rice*,
  927 F.2d 74 (2d Cir. 1991).....................................................................................................7

*Knox v. John Varvatos Enterprises Inc.*,
  512 F. Supp. 3d 470 (S.D.N.Y. 2021)....................................................................................5

*Loria v. Gorman*,
  306 F.3d 1271 (2d Cir. 2002).................................................................................................6

*Lundstrom v. Romero*,
  616 F.3d 1108 (10th Cir. 2010) ...........................................................................................11

*Madden v. Digital Equip. Corp.*,
  152 F.3d 919 (2d Cir. 1998).................................................................................................12

*Mincey v. Arizona*,
  437 U.S. 385 (1978)...............................................................................................................6

*Parkhurst v. Trapp*,
  77 F.3d 707 (3d Cir. 1996)...................................................................................................11

*Payton v. New York*,
  445 U.S. 573 (1980)...............................................................................................................6

*Raedle v. Credit Agricole Indosuez*,
   670 F.3d 411 (2d Cir. 2012)................................................................................................5

*Ray v. Twp. of Warren*,
   626 F.3d 170 (3d Cir. 2010)..............................................................................................11

*Song v. Ives Labor., Inc.*,
   957 F.2d 1041 (2d Cir. 1992)..............................................................................................5

*United States v. Landau*,
   155 F.3d 93 (2d Cir. 1998)..................................................................................................6

*United States v. Sikut*,
   488 F. Supp. 2d 291 (W.D.N.Y. 2007)................................................................................7

*United States v. Simmons*,
   661 F.3d 151 (2d Cir. 2011)................................................................................................6

**Statutes**

42 U.S.C. § 1983......................................................................................................................1

**Other Authorities**

Fed.R.Civ.P. 59............................................................................................................ 1, 5, 12-13

Fed.R.Civ.P. 60(b)(2)..............................................................................................................12

Plaintiff Wentworth Rattray moves this Court for a new trial pursuant to Federal Rule of Civil Procedure 59. The jury issued a verdict that is contrary to the clear weight of the evidence because, by Defendant Officer Jose Cadavid's own admission, he did not have exigent circumstances to conduct a warrantless entry into Mr. Rattray's home. A new trial is required.

## PRELIMINARY STATEMENT

On November 5, 2016, Officer Cadavid forced his way into Mr. Rattray's home, without a warrant. This entry violated the United States Constitution unless Defendants could establish some exigent circumstances existed. In this case, that means that the defense must have established that Officer Cadavid had some objective belief that Mr. Rattray's daughter, A.R., was in imminent danger. As Officer Cadavid testified himself, at the time he did not believe the child was injured or in imminent danger, nor was evidence proffered establishing imminent danger. The jury could have no basis on which to base its verdict, and a new trial is warranted.

## FACTUAL BACKGROUND

Mr. Rattray initiated this action on November 2, 2017. (ECF No. 2). Mr. Rattray filed the Third Amended Complaint on July 28, 2020, asserting claims under 42 U.S.C. § 1983 against Officers Cadavid and Alyssa Trigueno. Mr. Rattray alleged, in relevant part, that Officer Cadavid illegally entered his home, conducted a search, and falsely arrested him in violation of Mr. Rattray's Fourth Amendment rights. Mr. Rattray also alleged two claims for failing to intervene against Officer Trigueno. (ECF No. 99). On March 30, 2022, the Court denied Defendants' Motion for Summary Judgment on the illegal search, false arrest, and failure to intervene claims against Officers Cadavid and Trigueno, respectively. (Op. and Order on Summary Judgment, Mar. 30, 2023 (ECF No. 225), p. 2).

## SUMMARY OF EVIDENCE PRESENTED AT TRIAL

Trial commenced on August 29, 2023 and lasted four days. The following facts are undisputed:

In 2016, Mr. Rattray had primary custody of his daughter, A.R. (Tr. 124:l0-12; 191:12-24; 196:13-15).[1] A.R.'s mother, Wendy Sandy,[2] had court-ordered visitation on specific days and times. *Id.* Ms. Sandy did not have visitation on November 5, 2016. (*See* Plaintiff's Trial Ex. 3 (attached as Ex. B to the Geller Decl.) (setting forth the visitation days for W. Sandy)). Nevertheless, on November 5, 2016, Ms. Sandy arrived at Mr. Rattray's home to pick up A.R. for a visit, apparently confused or mistaken about her visitation days. (*See* Tr. 62:1-12; 63:10-16; 105:5-25). At the time, A.R. was with a friend on a play date. (Tr. 58:1-12; 104:10-16). Mr. Rattray informed Ms. Sandy that A.R. was not home and returned to his apartment. (Tr. 85:3-5; 106:4-6). Ms. Sandy then called 911. (Tr. 86:3-6). She informed the 911 operator that Mr. Rattray would not "give me [A.R.] . . . ." (Tr. 86:3-23). Although Ms. Sandy was purportedly "hysterical," she testified at trial that she did not tell the officers that MR. Rattray did drugs and that she was concerned for her daughter's safety. (Tr. 67:10-25; 71:9-25).

Officers Cadavid and Trigueno, responded to the 911 call. (Tr. 281:22-25; 282:1-18; 359:7-22). At trial, the witnesses offered differing testimony as to who spoke with Ms. Sandy, and what was said. Officer Cadavid testified that he spoke to Ms. Sandy and that Ms. Sandy stated that Mr. Rattray "was refusing to give her or let her see her child, and it was her time to have the daughter" and "wasn't giving the daughter back." (Tr. 361:16-19; 362:2-7; 417:7-11). Ms. Sandy herself testified that she spoke with Officer Trigueno. (Tr. 69:15-20). She repeatedly

---

[1] Transcript excerpts are attached as Exhibit A to the Declaration of Melissa S. Geller.

[2] Ms. Sandy testified at trial that the name she goes by is Sandy Wendy. However, for convenience, she is referred to here as Ms. Sandy, as that is how she was referenced during the trial.

and vehemently denied that she told either officer that Mr. Rattray did drugs, had drug dealers in the apartment or that she feared for A.R.'s safety. (Tr. 67:10-25; 68:1-22; 71:9-25; 89:16-25; 90:1, 13-18; 91:21-25; 92:1-7). Officer Trigueno denied being part of the conversation. (Tr. 287:5-12; 290:7-9).

Officers Cadavid and Trigueno proceeded to Mr. Rattray's apartment, where they knocked and announced themselves. (Tr. 295:4-10; 339:7-10; 424:3-5). When Mr. Rattray refused to open the door, Officer Cadavid threatened to take the door down. (Tr. 366:8-10; 447:12-22).

The parties offered inconsistent testimony as to what happened when Mr. Rattray opened the door. Mr. Rattray stated he told the officers that A.R. was not home, requested a supervisor, and tried to close the door. (Tr. 113:2-4; 115:14-19; 189:20-25). Officer Cadavid testified that Mr. Rattray refused to answer questions and tried to close his door. (Tr. 383:1-21; 384:14-19). Officer Cadavid also testified that he used his foot to prevent the door from closing, pushed his way into Mr. Rattray's home, and searched entire apartment without a warrant. (Tr. 382:4-5; 464:8-9). Even after confirming that the child was not in the home and despite Mr. Rattray's requests, Officer Cadavid refused to leave the apartment. (Tr. 210:2-8; 472:1-4). Officer Trigueno remained in the doorway, but outside the home. (Tr. 324:6-14). When Mr. Rattray asked Officer Cadavid to leave, Officer Cadavid said no, and when Mr. Rattray asked if he could leave his own home, Officer Cadavid again said no. (Tr. 133:3-21; 472:1-7). Officers Cadavid and Trigueno both testified that Mr. Rattray was not free to leave. (Tr. 389:25; 390:1-2; 471:14-15; 324:1-5). The officers did not leave until after a supervisor arrived. (Tr. 168:3-5; 471:7-9).

During trial, Officer Cadavid testified repeatedly that he did not believe A.R. or anyone else was in imminent danger when he entered the home:

3

>Q. And there's no sign of imminent injury to anybody?
>
>A. At that point I can't establish that yet.
>
>Q. From where you're standing when you step into the door when you first step into the apartment, there is no sign of imminent injury to anybody?
>
>A. From there, no.

(Tr. 430:3-10; *see also* Tr. 431:6-9 (testifying that he did not see anything that could give rise to a concern that anybody was in imminent danger of being harmed); Tr. 434:8-14 (testifying that the search revealed no sign that anyone was injured or in imminent danger of being injured); Tr. 435:13-17 (same); Tr. 472:13-19 (same)).

Officer Cadavid also testified:

>Q. And that's the basis for your belief that the child was in imminent danger.
>
>A. Not imminent, but also from what Ms. Sandy stated, that she was not safe, that she was in danger.
>
>Q. Okay. That was the basis for your testimony that she was in imminent danger.
>
>A. I wouldn't consider that imminent danger.
>
>Q. You wouldn't consider that imminent danger.
>
>A. No, not my definition.

(Tr. 487:17-25; Tr. 488:13-19 (testifying that there was no medical emergency and no imminent danger); Tr. 489:11-17). (testifying that Officer Cadavid did not believe there was imminent danger)).

And he went on to testify:

>Q. You didn't make entry because you were concerned the child was in imminent danger

4

>A. Imminent danger, no.

(Tr. 490:24 – 491:1).

Officer Trigueno also testified to the following:

>Q. Right. Officer Trigueno, I'm asking a very simple question. You never heard her say that her child was in danger——
>
>A. No.

(Tr. 345:24-25 – 346:1-2).

Officer Cadavid also testified that he conducted an investigation into the whereabouts of A.R. and remained in Mr. Rattray's home while waiting for supervisor. (Tr. 389:2-8). Officer Cadavid testified that he waited approximately 20 minutes for a supervisor to arrive. (Tr. 473:4-8). Mr. Rattray testified that it took 20 to 30 minutes. (Tr. 388:16-18). Mr. Rattray testified that he spoke with the supervisor and then the Defendants left. (Tr. 168:3-5).

## ARGUMENT

Rule 59 requires the grant of a new trial where "the jury has reached a seriously erroneous result or . . . the verdict is a miscarriage of justice.'" *DLC Mgmt. Corp. v. Town of Hyde Park*, 163 F.3d 124, 133 (2d Cir. 1998) (quoting *Song v. Ives Labor., Inc.*, 957 F.2d 1041, 1047 (2d Cir. 1992)). A new trial should be ordered where: (1) the verdict is against the clear weight of the evidence; (2) the trial court was not fair; (3) substantial errors occurred in the admission or rejection of evidence or the giving or refusal of instructions to the jury; or (4) damages are excessive. *Knox v. John Varvatos Enterprises Inc.*, 512 F. Supp. 3d 470, 478 (S.D.N.Y. 2021). The Court can grant a new trial "even if there is substantial evidence supporting the jury's verdict." *Id.* at 478–79 (quoting *DLC Management Corp.*, at 134). Although a new trial is extraordinary relief, the Court must weigh the evidence itself, and is not required to view the evidence in a light most favorable to the winner. *Raedle v. Credit Agricole*

*Indosuez*, 670 F.3d 411, 418 (2d Cir. 2012) (citing *United States v. Landau*, 155 F.3d 93, 104 (2d Cir. 1998)).

The verdict here is against the weight of the evidence because Officer Cadavid admitted that he did not have exigent circumstances to enter Mr. Rattray's home. The Fourth Amendment protects citizens' right to be free of unreasonable searches and seizures. U.S. CONST. AMEND. IV. A warrantless entry into a home is presumptively unreasonable. *Brigham City, Utah v. Stuart*, 547 U.S. 398, 403 (2006); *United States v. Simmons*, 661 F.3d 151, 156 (2d Cir. 2011). A warrantless search can be justified only if "it falls within one of a carefully defined set of exceptions based on the presence of exigent circumstances. *Coolidge v. New Hampshire*, 403 U.S. 443, 474–75 (1971), *holding modified by Horton v. California*, 496 U.S. 128 (1990). Exigent circumstances are circumstances in which "the needs of law enforcement [are] so compelling that the warrantless search is objectively reasonable under the Fourth Amendment." *Brigham City*, 547 U.S. at 403 (quoting *Mincey v. Arizona,* 437 U.S. 385, 393–394 (1978)).

As relevant here, exigent circumstances exist when there is a need to render emergency assistance or to protect a person from imminent injury. *Id.*; *Loria v. Gorman*, 306 F.3d 1271 (2d Cir. 2002) (no exigent circumstances to overcome warrant requirement where there was no risk of serious injury, no weapons present, or risk of violence).

Suspicion that a crime is happening inside the home does not create exigent circumstances. *Payton v. New York*, 445 U.S. 573, 601 (1980) (explaining police must have exigent circumstances, not bare suspicion to search a home without a warrant); *see also Harris v. O'Hare*, 770 F.3d 224, 235-36 (2d Cir. 2014), *as amended* Nov. 24, 2014 (holding that generalized knowledge that illicit guns move quickly and suspicion that guns might be in the home do not constitute exigent circumstances to justify the warrantless search). Nor is the "mere

possibility" of danger insufficient to justify a warrantless entry into the home. *Hurlman v. Rice*, 927 F.2d 74, 77 (2d Cir. 1991).

Thus, for the jury to find for the Defendants, it must have found that Officer Cadavid had an objectively reasonable belief, based on concrete information, that it was necessary to enter the home to render immediate assistance to A.R. *United States v. Sikut*, 488 F. Supp. 2d 291, 307 (W.D.N.Y. 2007). No evidence supports such a finding. In fact, Officer Cadavid's testimony precludes any such finding.

First, Officer Cadavid did not have any objectively reasonable basis to believe A.R. was in imminent danger, even if Court credits his testimony that Ms. Sandy stated there were drugs and possibly drug dealers in the apartment. Although possibly detrimental to the child in the long term, nothing supports an assumption that unspecified drugs or drug dealers in the apartment created an *imminent* danger of harm. (Tr. 67:10-25; 71:9-25; 89:16-25; 90:1-19; 91:21-25). Further, when Officers Cadavid and Trigueno approached the apartment, they heard no evidence of any other person in the apartment, much less "drug dealers." (Tr. 89:16-25; 90:1-19; 290:1-9; 301:8-13; 315:12-15). When Mr. Rattray opened the door, Officers Cadavid and Trigueno both testified that they heard no evidence of other people in the apartment. (Tr. 297:11-25; 426:14-24; 427:21-25; 428:1-6). Officer Cadavid testified that he entered the home because he believed some crime of child abuse was being committed. (Tr. 408:4-10; 489:2-25). But, there was no evidence proffered by Ms. Sandy that Mr. Rattray abused A.R. And there was no history of child abuse in Mr. Rattray's record, even if Officer Cadavid had run a search for Mr. Rattray's history. Neither defendant heard a child crying or calling for help, or saw any evidence that a child was in the apartment. (Tr. 294:13-25; 295:1-3; 297:3-5; 310:1-7; 426:14-

7

25; 435:8-17). Officer Cadavid offered no evidence at all to support a suspicion of child abuse. (Tr. 489:2-25; 492:6-12).

Tellingly, Officer Cadavid could never articulate the "danger" he believed A.R. faced. When pressed, the only justification he could offer was a concern that "Mr. Rattray [was] either abusing the child or [committing] some type of child crime." (Tr. 489:7-10). Shortly after making that statement, he admitted, however, that he had no basis to suspect child abuse:

> Q. She didn't say, with any specificity, any crime against a child when she talked to you, did she?
>
> A. No specific crime.
>
> Q. What she said was that he does drugs, right?
>
> A. That was one, yeah, one.
>
> Q. And that he has drug dealers over the apartment, right?
>
> A. Correct.
>
> Q. Those were the specifics she gave.
>
> A. Yes.
>
> Q. So when you're standing at the door, that's all the information you have, right?
>
> A. Yes.

(Tr. 490:9-20).

Officer Cadavid admitted that he had no basis to believe A.R. was in imminent danger when he entered the home:

> Q. No. You're standing -- I'm asking, you're standing in the apartment, right? And you do not see any sign of any other adults in that the apartment?
>
> A. In the area where I could see, no.
>
> Q. And there's no sign of anybody injured?

8

>A. No.
>
>Q. And there's no sign of imminent injury to anybody?
>
>A. *At that point I can't establish that yet.*
>
>Q. From where you're standing when you step into the door when you first step into the apartment, there is no sign of imminent injury to anybody?
>
>A. From there, no.

(Tr. 429:25 – 430:1-10) (emphasis added).

And he freely admitted that, although he was concerned for A.R.'s safety, he never believed A.R. was in imminent danger:

>Q. Okay. So you've got the drugs and the drug dealers, right?
>
>A. Yes.
>
>. . .
>
>Q. And the yelling and the cursing.
>
>A. Yes.
>
>Q. And your analysis that it's not normal, it's not a normal reaction, right?
>
>A. Yes.
>
>Q. And that's the basis for your belief that the child was in imminent danger.
>
>A. Not imminent, but also from what Ms. Sandy stated, that she was not safe, that she was in danger.
>
>Q. Okay. That was the basis for your testimony that she was in imminent danger.
>
>A. I wouldn't consider that imminent danger.
>
>Q. You wouldn't consider that imminent danger.
>
>A. No, not my definition.

9

(Tr. 487:8-25); *see also* Tr. 489:13-17 (testifying he did not believe there was imminent danger based on the facts known to him at the time); Tr. 490:23-491:1 (testifying that he did not make entry because he believed the child was in imminent danger)). As Officer Cadavid admitted in his testimony, his primary goal was to investigate the possible commission of some unarticulated crime.

> Q. And so I think you just said that what we just went through was not your definition of imminent, right?
>
> A. Correct.
>
> Q. So what was your basis for entering the apartment?
>
> A. Possible crime being committed.
>
> Q. Possible crime being committed.
>
> A. Yes.
>
> . . .
>
> Q. So you made entry into the apartment because you believe that a crime was being committed?
>
> A. I was trying to establish, I was trying to investigate, yes.

(Tr. 488:20 – 489:21).

Although he states he believed the child may be in danger, he admitted that there was no urgent need to render immediate aid or protection. Nor would have a reasonable basis to believe A.R. was in need of immediate assistance. He heard no sounds suggesting a child was in the apartment (Tr. 426:14-22; 427:2-25), he never saw a child in the apartment (Tr. 435:16-17), Mr. Rattray stated that the child was not home (Tr. 114:4-25; 162:22-25), there was no sign of violence or of injury (Tr. 430:5-10; 4:34:8-14; 435:8-15), and there were no allegations of child abuse or child harm (Tr. 507:18-25; 508:3-8).

Officer Cadavid's speculation, based on his own conjecture, that the child may face some unarticulated danger, does not create an immediate exigency sufficient to overcome the protections of the Fourth Amendment.  For example, in *Lundstrom v. Romero*, the Tenth Circuit considered a case where a neighbor reporting hearing a domestic altercation, sounds of someone hitting a child, and sounds of a child screaming.  616 F.3d 1108, 1115 (10th Cir. 2010).  When the police arrived, the homeowner was hostile and stated that there was no child in the house.  *Id.* at 1116.  Officers also heard a high-pitched voice that may or may not have been a child.  *Id.* Officers convinced the homeowner to leave the house, detained him, and searched the house.  *Id.* at 1118.  The court held the warrantless search of the home to be illegal.  The officers had seen no sign that a child was in the house (none was found), and "encountered nothing suggesting that someone inside [the home] was in immediate danger or seriously injured.  *Id.* at 1128.

Officer Cadavid's apparently completely speculative concern of some amorphous fear of child abuse did not create an exigency where none existed.  *Ray v. Twp. of Warren*, 626 F.3d 170, 177 (3d Cir. 2010) (citing *Parkhurst v. Trapp*, 77 F.3d 707, 711 (3d Cir. 1996) (observing that "circumstances involving the protection of a child's welfare . . . may present an exigency permitting warrantless entry, but only if the officer reasonably believes that "someone is in *imminent* danger" (emphasis in original))).  There were never any allegations of abuse, or that Mr. Rattray ever harmed his daughter.  Nor was there any basis to think that he was doing so at the time.  Even if the presence of drugs and drug dealers automatically created a risk of immediate harm, there was no evidence of either when Officer Cadavid appeared at Mr. Rattray's door.

Officer Cadavid admits that he had no evidence supporting a belief that A.R. was in imminent danger.  He further admits that he did not believe at the time that A.R. was in

11

imminent danger or need of emergency assistance. He had only a vague and speculative concern of a generalized "danger." This is insufficient to overcome the presumption that a warrantless entry is unreasonable. The jury's verdict is against the weight of all available evidence. A new trial is warranted. Because the false arrest and failure to intervene allegations rest, in large part, on the reasonableness of Officer Cadavid's entry, a new trial on all counts is warranted.

Office Cadavid also testified regarding the statements and actions by the responding supervisor, Lieutenant Filipp Khosh. (Tr. 475:24; Tr. 476:1-15; Tr. 477:1-25; 484:1-16; Tr. 390:23-25). Officer Cadavid's testimony was new and was not previously provided by Defendants during the course of discovery when Mr. Rattray was pro se. These statements should be considered as new evidence and further grounds for granting a new trial. *Berry v. Dep't of Corr.*, No. 93 CIV.6448 BSJ, 2004 WL 287666, at *2–4 (S.D.N.Y. Feb. 11, 2004) (granting new trial and explaining the Rule 59 and 60(b)(2) standard based on newly discovered evidence); *see also Geressy v. Digital Equip. Corp.*, 980 F. Supp. 640, 646–47 (E.D.N.Y. 1997), *aff'd* in part sub nom. *Madden v. Digital Equip. Corp.*, 152 F.3d 919 (2d Cir. 1998).

Accordingly, no reasonable juror could determine, on this evidentiary record that there was imminent danger justifying a warrantless search and detainment of Mr. Rattray in his home.

12

## **CONCLUSION**

For the reasons stated, Mr. Rattray requests new trial under Rule 59.

Dated: September 25, 2023

By: */s/ Melissa S. Geller*
Melissa S. Geller
DUANE MORRIS LLP
1540 Broadway
New York, NY 10036
Tel: (212) 692-1077
Fax: (973) 556-1562

Y. Katie Wang
DUANE MORRIS LLP
230 Park Avenue, Suite 1130
New York, NY 10169-0079
Telephone: (212) 404-8740
Facsimile: (212) 656-1819

Angela J. Benoit (*admitted pro hac vice*)
DUANE MORRIS LLP
100 High Street, Suite 2400
Boston, MA 02110
Tel: (857) 488-4227
Fax: (857) 488-4201

*Attorneys for Plaintiff Wentworth Rattray*

13

## CERTIFICATE OF SERVICE

      I hereby certify that this document, filed through ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing, and paper copies will be sent to those indicated as non-registered participants.

Dated:  September 25, 2023               */s/* Melissa S. Geller
                                                    Melissa S. Geller